STATE ex rel. JAMES ROBERTSON v. NEW ENGLAND
FURNITURE & CARPET COMPANY and Others.[1]

June 12, 1914.

Nos. 18,622—(20).

**Property — use injurious to public health or morals.**

1. An owner of property has no vested or constitutional right to use or
allow the use of it for purposes injurious to the public health or morals, and,
if he has knowledge or notice in the premises, he cannot complain if loss
ensues, when the law deals therewith in any way reasonably necessary for
the suppression of the evil in connection with which it is used.

**Bawdy house — seizure of personal property therein.**

2. Although, prior to Laws 1913, c. 562, there was no statute authorizing
seizure or forfeiture of personal property used in connection with the main-
tenance of a bawdy house, equity had power to deal with such property in
any way reasonably necessary to the abatement of the nuisance in which it
was employed.

**Same — conditional sale of chattels — right of seller.**

3. An owner of personal property covered by a contract of conditional sale
executed prior to the enactment of Laws 1913, c. 562, had no vested right,
contractual or otherwise, to allow it to be used in connection with the main-
tenance of a bawdy house after the passage of the act, even if prior thereto
such sale and use were not unlawful.

**Act valid.**

4. Laws 1913, c. 562, *held* not invalid as constituting an unreasonable
exercise of the police power with respect to personal property used in main-
tenance of a bawdy house.

**Evidence of nuisance — due process of law.**

5. Neither section 3 of the act, making the general reputation of the place

[1] Reported in 147 N. W. 951.

---

Note.—As to the right to compensation for property destroyed in abating
public nuisance, see note in 19 L.R.A. 196.   And upon the power of health
authorities to require alteration on private property in particular manner to
abate nuisance endangering public health, see note in 24 L.R.A.(N.S.) 241.

as being a bawdy house *prima facie* evidence of the existence of the nuisance, etc., nor section 5, creating a presumption of knowledge on the part of all defendants, authorizes interference with property rights without due process of law; being merely a change in matter of procedure, which was entirely within the power of the legislature to make, without reference to whether the causes of action or rights to which it would apply were already in existence or would accrue thereafter.

**Preponderance of evidence.**

6. The provision of section 5 that claimants of personalty used in maintaining the house must prove innocence "to the satisfaction of the court," is not subject to the objection that it calls for more than a preponderance of the evidence.

**Provision of act inapplicable.**

7. Section 6 applies only to defendants convicted in inferior courts, and, if invalid, does not concern appellants as defendant property owners in the civil action alone.

**Injunction.**

8. The act does not contemplate determination of the rights of defendants to personal property used in the house, on application for a temporary injunction.

Action in the district court for Hennepin county by the county attorney in the name of the state against defendants Lane, Kalogerson, Hadris, Isadore Weisman, William Weisman, and all other persons or parties unknown claiming any right, title, estate, lien or interest in the personal property and real estate described in the complaint, to abate a nuisance, to enjoin defendant Lane from maintaining the nuisance, to enjoin the other defendants from permitting such use of the building, and to obtain an order in which the court should direct that all the furniture, fixtures and musical instruments and movable property used in conducting such house should be removed from the building and sold according to law, to direct the effectual closing of the building for the period of one year unless sooner released by law, and to impose a penalty of $300 according to law. Plaintiff obtained an order requiring defendants to show cause why an injunction should not be issued restraining defendant Lane from maintaining the house and restraining the other defend-

ants from permitting the building to be used as a house of ill fame, and to restrain the removal of the furniture, fixtures, musical instruments and movable property in the building.

The New England Furniture & Carpet Co. and the Hartman Furniture & Carpet Co. were permitted to intervene and they each filed answers to the complaint.

The matter was heard before Molyneux, J., who denied the motion of defendant Lane to dismiss the action and ordered a temporary injunction restraining defendants as prayed in the complaint, without prejudice to the defendants other than Lane, Kalogerson and Hadris, making application for a modification of the injunction. From the order granting the temporary injunction, the intervening defendants appealed. Affirmed.

*Stevens & Stevens, E. P. Mahoney* and *Jonas Weil,* for appellants.

*Lyndon A. Smith,* Attorney General, and *James Robertson,* County Attorney, for respondent.

*Charles S. Cairns,* at the request of the Attorney General, filed a brief for respondent.

PHILIP E. BROWN, J.

Appeal by the New England Furniture & Carpet Co., the Hartman Furniture Co. and Isadore and William Weisman, from an order granting a temporary injunction under Laws 1913, p. 815, c. 562, restraining defendant Lane from further conducting a bawdy house in a certain building in Minneapolis, and also enjoining further use of the house for such purpose, and all defendants from removing or interfering with the furniture and movable property theretofore employed in maintaining the same until further order.

The facts and proceedings antecedent to the order were as follows: On December 5, 1913, defendant Lane was convicted in the municipal court of Minneapolis of the offense of maintaining such house at the place mentioned. Thereafter the county attorney instituted an action for abatement and all relief prescribed by the terms of the act. All the defendants except Lane answered. The New England and Hartman companies alleged, among other things, ownership,

under conditional sale contracts, of certain personal property in the house, and denied knowledge or notice or reasons for belief that defendant Lane was maintaining the nuisance alleged. Defendants Weisman admitted ownership of a leasehold interest in the property, and denied knowledge or notice of the nuisance. Thereafter plaintiff applied for a temporary injunction under section 2 of the act, and on the hearing all the defendants appeared, and the record of defendant Lane's conviction in the municipal court was received in evidence, together with oral evidence of the bad reputation of the house prior thereto. Defendants objected to all the evidence and also to the granting of the order, for numerous reasons hereinafter to be considered, and offered to prove the allegations of their answers, which they were not permitted to do. The order of the court, however, was conditioned to be without prejudice to the right of any of defendants except Lane to make application, under the law, for a modification of the temporary writ to be issued under the order. After this appeal was taken, the parties stipulated, for the purposes thereof only, that the material allegations of defendants' answers were true except the claim of lack of knowledge or notice.

Defendants raise the same constitutional objections to the validity of the act that were considered in State v. Ryder, infra, page 95, 147 N. W. 953, and in which the provisions of the act are stated, and in addition certain questions concerning procedure and personal property not there determined. The discussion will be confined to these questions.

1. Defendants New England and Hartman companies contend that as their conditional sale contracts were entered into and their contractual rights fixed prior to the passage of the act, and the property covered thereby being "innocent," interference therewith under the terms of the act constituted violation of their vested rights and impairment of contractual obligations. The act, however, condemns only "movable property used in conducting or maintaining" the nuisance, and operates only against those having knowledge, or who by reasonable diligence could have acquired it, of such unlawful use; authorizing owners to come in and prove innocence. No vested or

126 M.—6.

constitutional right exists to use or allow the use of property for purposes injurious to either public health or morals, and an owner, with knowledge or notice in the premises, cannot complain if loss ensues, when the law deals with the property in any way reasonably necessary for the suppression of the evil in connection with which it is used.

"Every owner of property holds title thereto subject to the authority of the state to so regulate its use and enjoyment as to prevent and abate public nuisances, and the enforcement of that authority works no legal wrong." City of Waterloo v. Waterloo, C. F. & N. R. Co. 149 Iowa, 129, 125 N. W. 819.

It is true, as claimed, that when the contracts were executed no statute then provided for forfeiture in such cases, but equity nevertheless could have dealt with the property in any way reasonably necessary to suppress the nuisance in which it was employed. Assuming, however, that neither the sale when made nor subsequent use of the property in question would, prior to the act, have subjected it to seizure, defendants acquired no vested right, contractual or otherwise, to allow such use to continue after it was declared a nuisance by the act. City of Waterloo v. Waterloo C. F. & N. R. Co. supra.

"Where parties contract on matters within the police power of the state, they do so subject to the exercise of that power whenever the legislature chooses to exercise it." State v. Smith, 58 Minn. 35, 38, 59 N. W. 545, 546, 25 L.R.A. 759.

As declared by Mr. Justice Harlan, in Mugler v. Kansas, 123 U. S. 623, 665, 8 Sup. Ct. 273, 299, 31 L. ed. 205:

"All property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community."

On the same page we find the following, quoted from New Orleans Gas-Light Co. v. Louisiana Light & Heat Producing & Mfg. Co. 115 U. S. 650, 672, 6 Sup. Ct. 252, 29 L. ed. 516:

"The constitutional prohibition upon state laws impairing the obligation of contracts does not restrict the powers of the state to pro-

tect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts."

Defendants acquired no vested right which deprived the legislature of power to change the law.    8 Cyc. 896.

"It is true," said Mr. Justice Harlan, in Mugler v. Kansas, 123 U. S. at page 669, 8 Sup. Ct. 273, 31 L. ed. 205; "that, when the defendants in these cases purchased or erected their breweries, the laws of the state did not forbid the manufacture of intoxicating liquors.    But the state did not thereby give any assurance, or come under an obligation, that its legislation upon that subject would remain unchanged.    Indeed, as was said in Stone v. Mississippi, above cited (101 U. S. 814, 816 [25 L. ed. 1079]), the supervision of the public health and public morals is a governmental power, 'continuing in its nature,' and 'to be dealt with as the special exigencies of the moment may require;' and that, 'for this purpose, the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself.'"    See, also, Logan & Bryan v. Postal Telegraph & Cable Co. (C. C.) 157 Fed. 570, 580.

Neither can we declare the act invalid for unreasonableness in the exercise of the police power in these regards.    Defendants' contentions are not sustained.

2. Does the act authorize interference with defendants' property rights without due process of law?    Defendants claim an affirmative answer is required by the provisions of section 3, relative to general reputation as *prima facie* evidence, and section 5, creating a presumption of knowledge on the part of all defendants.    We consider the power of the legislature so to provide too well settled to merit protracted discussion.    See State v. Anderson, 83 Conn. 55, 75 Atl. 81; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. 668, 682, note; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; Marx v. Hanthorn, 148 U. S. 181, 13 Sup. Ct. 508, 37 L. ed. 410; State v. McDonald, 152 N. C. 802, 67 S. E. 762; State v. Barrett, 138 N. C. 630, 50 S. E. 506, 1 L.R.A.(N.S.) 626; State v. Thomas, 144 Ala. 77, 40 South. 271, 2 L.R.A.(N.S.) 1011, 6 Ann. Cas. 744, 113 Am. St. 17, 20, note; Logan v. Postal Tel. & C. Co. supra.    Nor is the power of the legislature in the premises limited

to causes of action accruing in the future; the change being purely remedial and hence necessarily applicable only to future proceedings, whether such involve rights and choses in action existing when the act was enacted or those accruing thereafter. See note, 36 Am. St. 682.

"A rule of presumption," says Mr. Wigmore in his work on Evidence, § 1354, p. 1670, "is simply a rule changing the burden of proof, i. e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced (post, § 2490). There is not the least doubt, on principle, that the legislature has entire control over such rules, as it has over all other rules of procedure in general and evidence in particular (ante, § 7), —subject only to the limitations of evidence expressly enshrined in the Constitution. * * * Yet this elementary truth has been repeatedly questioned, and courts have repeatedly vouchsafed an unmerited attention to the question, chiefly through a hesitation in appreciating the true nature of a presumption and a tendency to associate in some indefinite manner the notion of conclusively shutting out all evidence and that of merely shifting the duty of producing it. Fortunately, sound principle has almost everywhere prevailed, though at an unnecessary expense of argument and hesitation." See, also, Tift v. Southern R. Co. (C. C.) 138 Fed. 753, 759.

The fact that under section 5 owners claiming personalty so seized are required to prove their innocence "to the satisfaction of the court," is without significance upon the validity of the law; the word "satisfaction" being practically equivalent to the phrase "satisfaction by a preponderance of the evidence." See State v. McDonald, supra, 152 N. C. 807, 67 S. E. 762.

Section 6 applies only to defendants convicted in inferior courts— the word "now" being a misprint for "not" [1]—prior to the civil proceedings, and if invalid does not concern the appealing defendants.

3. The act does not contemplate a determination of the rights of defendants to personal property in the house, on hearing of the application for the temporary injunction, nor before trial of the action.

Order affirmed.

[1] [See footnote on page 99. Reporter.]