STATE ex rel. RICHARD S. WILCOX v. ANNA M. RYDER.

STATE ex rel. RICHARD S. WILCOX v. C. E. GILBERT and Another.

STATE ex rel. RICHARD S. WILCOX v. A. M. WHITFORD and Another.[1]

June 12, 1914.

Nos. 18,704, 18,707, 18,708—(21, 22, 23).

**Abatement of nuisance — equity jurisdiction — disorderly house.**

1. Independently of statute, the jurisdiction of equity extended to abatement of nuisances long prior to the enactment of Laws 1913, c. 562, relating to abatement of bawdy houses, and the legislature had power, subject only to constitutional limitations, to extend such jurisdiction to the general subject-matter of such act.

**Statute — presumption of validity.**

2. In the enactment of statutory law, the legislature is presumed to have intended to keep within constitutional bounds, and, unless a statute is unconstitutional beyond a reasonable doubt, it must be sustained.

**Act construed not penal.**

3. Laws 1913, c. 562, *held* intended by the legislature to be a civil, as distinguished from a penal, act, especially in view of the fact that, when it was enacted, the criminal aspect of maintenance of bawdy houses was already fully covered by existing statutes which had not resulted in efficient repression or suppression of the evil aimed at.

**Right to trial by jury.**

4. Since the constitutional right to jury trial merely preserves such right as it existed when the Constitution was adopted, and is inapplicable to actions based upon equitable causes of action or for equitable relief alone, Laws 1913, c. 562, being manifestly intended to repress the nuisance of bawdy houses by equitable attack upon the property of those engaged in or abetting them, and not to punish offenders by infliction of personal penalties, except

[1] Reported in 147 N. W. 953.

as for contempt, does not violate the constitutional guaranty of jury trial merely because the thing declared a nuisance, and against which the remedies of the act are provided, would, in its maintenance, have constituted a crime at the time of the adoption of the Constitution.

**Act constitutional.**

5. The act is not penal, either in its general aspect, or in its details, with reference to forfeiture and sale of personal property used in maintaining the nuisance, the closing, to all purposes for one year, of premises in which the lewd business is carried on, the imposition of a money exaction against the property and persons participating in the nuisance, or otherwise; and hence it neither violates the Constitution, as denying jury trial in criminal proceedings, nor contravenes constitutional limitations as to excessive fines and unusual punishments, right to be confronted by witnesses, testifying against one's self, and bills of attainder and *ex post facto* laws.

**Court has jurisdiction to grant full relief.**

6. Viewed as a civil action, proceedings under the act, being equitable, do not require a jury trial, and the court, having properly assumed jurisdiction thereof, had power to grant full relief, incidental as well as primary.

**Act unaffected by validity of section 7.**

7. Section 7 of the act, relating to the right of the owner of the premises to obtain release thereof by giving bond and paying costs, is unnecessarily drastic, but the other sections are not affected thereby even if it be held invalid.

**Forfeiture.**

8. The act is not invalid as entailing unconstitutional forfeitures of estate upon conviction for an offense, the legislature having power to provide for specific forfeitures for specific acts, including total destruction, in a proper case, of property *per se* innocent; nor does it authorize summary forfeitures and penalties without sufficient notice and hearing.

**Police power.**

9. The act, in its remedial details as well as its general purpose, is a proper exercise of the police power, under the test that a police measure must fairly tend to accomplish the purpose of its enactment and must not go beyond the reasonable demands of the occasion.

Three actions in the district court for Ramsey county under Laws 1913, p. 815, c. 562, for abatement of bawdy houses. The cases were tried before Dickson, J., who made findings and ordered judgment in favor of plaintiff restraining the maintenance of the houses, and

against plaintiff in respect to the seizure and sale of the furniture, fixtures, musical instruments and movable property in the houses, in respect to the effectual closing of the houses for one year or at all, and in respect to the recovery of the penalty of $300. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed in part.

*Richard D. O'Brien,* County Attorney, and *Patrick J. Ryan,* Assistant County Attorney, for appellant.

*Thomas J. Newman, James Cormican, James Schoonmaker, William F. Hunt, S. J. Donnelly* and *Harry Weiss,* for respondents.

PHILIP E. BROWN, J.

Three separate actions under Laws 1913, p. 815, c. 562, for abatement of bawdy houses. The complaints were sufficient in form and substance to authorize full relief under the statute, and all defendants, except Towne, upon whom no service of summons was made, answered to the following effect: Defendant Gilbert admitted that she resided in and worked as housekeeper of the house claimed to be a nuisance, but denied the other allegations of the complaint. Defendant Drewry admitted ownership of the premises, alleged the leasing thereof to one Harrigan, and denied acquaintance or dealings with defendant Gilbert, and knowledge or notice of her occupancy of the premises or the use thereof alleged. Defendant Ryder admitted ownership, occupancy and control of the building, and denied all other allegations. Defendant Whitford, charged with maintenance of the house, denied the charge, and defendant Towne, alleged to be the owner thereof, did not appear. The court found that defendants Whitford and Ryder were engaged as claimed, that defendant Harrigan was lessee from defendant Drewry and owned the personal property used therein, defendant Gilbert being his housekeeper, aiding and abetting in the conduct of the business, and, further, that defendant Drewry, by the exercise of reasonable diligence, could have ascertained and known of the use made of such premises. No findings were made against defendant Towne. Plaintiff was found entitled to injunctions perpetually restraining all defendants, except

126 M.—7.

Towne, from further conducting or maintaining the public nuisances alleged, but no other relief, and appealed from the judgments entered accordingly.

Defendants' point as to insufficiency of the assignments of error, is overruled because nonprejudicial, and we proceed to the merits. All. questions raised hinge upon the constitutionality, effect, and construction of the act referred to, which, being too voluminous to quote in full, may be summarized as follows:

Sec. 1. "Whosoever shall erect, establish, continue, maintain, use, own or lease" any building, etc., used for lewdness, etc., is guilty of a nuisance, and such building, etc., and also the movable personalty so used itself, constitutes a nuisance subject to abatement as such.

Sec. 2. "An action in equity" to perpetually enjoin the nuisance and to restrain all parties from maintaining or allowing it, may be maintained in the name of the state upon relation of the county attorney or any citizen of the county; defendants to be served as in other actions, and the court, or judge in vacation, "shall," without requiring bond, allow a temporary injunction if satisfied by affidavits, or other evidence previously ordered to be produced, of the existence of the nuisance, and, upon application for such writ, an *ex parte* restraining order may issue, restraining all persons from interfering with the movable property used in conducting the nuisance, the same to be served by handing to and leaving with the person in charge of the property or residing in the premises a copy thereof, or by posting a copy on the premises, etc., or by both. The serving officer shall forthwith make return into court and also inventory the movable property. Three days written notice shall be given defendants of the hearing of the application for the temporary injunction, which, however, issues as a matter of course if the case be continued upon their application. Defendants notified shall serve answers before date set for hearing, and extension of time to answer, though allowable by the court, shall not prevent issue of the temporary writ. Injunction granted binds all defendants throughout the judicial district and its violation constitutes contempt.

Sec. 3. Action is triable as other actions in the district court. Evidence of general reputation of the place is admissible to prove existence of the nuisance, and "shall be *prima facie* evidence" thereof and of knowledge thereof and acquiescence and participation therein by all persons in possession of the property used in conducting the same or having any interest therein.

Sec. 4. Contempt in proceedings under the act or in violating any injunction or restraining order issued thereunder, is punishable, after summary trial, "by a fine of not less than one hundred nor more than one thousand dollars or by imprisonment in the county jail not less than three nor more than six months or by both fine and imprisonment."

Sec. 5. Upon proof, in either the equity action or in a criminal proceeding in the district court, of the existence of the nuisance, an order of abatement shall be entered as part of the judgment in the case, directing removal of all the movable personalty referred to, and sale of such thereof as belongs to defendants notified or appearing, and also "the effectual closing of the building or place against its use for any purpose" for one year unless sooner released. Owners of unsold personalty must appear and claim same within ten days after the order of abatement is made and prove innocence "to the satisfaction of the court" of knowledge of said use thereof, and also inability to have acquired such knowledge by reasonable care and diligence; every defendant being presumed to have known the general reputation of the place. If their innocence is thus established, the property shall be delivered to them, but otherwise sold. Breaking, entering, or using the place so closed constitutes contempt.

Sec. 6. Upon establishment of the existence of the nuisance in a criminal proceeding in a court not[1] having equitable jurisdiction, the county attorney shall promptly proceed "to enforce the provisions and penalties" of the act, and conviction in the criminal proceedings, unless reversed, is conclusive against defendant therein as to the existence of the nuisance. Money collected under the act

---

[1]Misprinted as "now" in Laws 1913 and G. S. 1913, § 8722. See enrolled act.

is payable to the county treasurer and the proceeds of the sale of the personalty are applicable to payment of costs, except as thereafter stated in the act.

Sec. 7. The owner of the premises may obtain its release by payment of all costs of the proceedings and giving bond with certain prescribed conditions looking to abatement, but such will not release it from any judgment, lien, penalty or liability to which it may be subject by law.

Sec. 8. Upon issue of a permanent injunction under the act, there shall be imposed upon the building and the ground upon which the same is located, and against the person or persons maintaining the nuisance, and the owner or agent of the premises, a "penalty of three hundred dollars," such penalty to be imposed as a part of the proceedings, and returned to the county auditor and entered "as a tax upon the property and against the persons upon which or whom the lien was imposed as and when other taxes are entered, and the same shall be and remain a lien on the land upon which lien was imposed until fully paid." Payment of said penalty does not relieve persons or property from other penalties provided by law. It is collectable as provided by the tax laws so far as applicable, and when collected is applicable to payment of any deficiency in the costs of the action and abatement on behalf of the state, after application of the proceeds of the personal property thereto, the remainder of proceeds from both sources to be distributed the same as fines for keeping houses of ill fame, except that 10 per cent shall be paid as an attorney's fee to the attorney representing the state.

Sec. 9. Where the owner or agent of the premises is not a party and does not appear, the $300 penalty is nevertheless to be imposed against the persons served or appearing and against the property. "But before such penalty shall be enforced against such property, the owner or agent thereof shall have appeared therein or shall be served with summons therein." R. L. 1905, §§ 4111, 4112, providing for substituted service, are applicable to proceedings under the act. The record owner "for the purposes of taxation" is presumed to be the true owner, and unknown persons interested may

be made parties by so designating them and service by publication as provided in said section 4111. "Any person having or claiming such ownership, right, title or interest, and any owner or agent in behalf of himself and such owner may make, serve and file his answer therein within twenty days after such service and have trial of his rights in the premises by the court; and if such cause has already proceeded to trial or to findings and judgment, the court shall by order fix the time and place of such further trial and shall notify, add to or confirm such findings and judgment as the case may require," but other parties to the action shall not be affected thereby.

1. Bawdy houses were public nuisances at common law. 1 Wood, Nuisances (3d ed.) § 29. They are also made such by statute. G. S. 1913, § 8759. Maintenance thereof, wilful refusal or omission to perform any legal duty relating to their removal, or letting or permitting use of any building, knowingly, for such purpose, constitutes a misdemeanor. Section 8760. By section 8712 keepers of such resorts are declared guilty of felony, and those who let buildings knowingly for such use, or who permit the same, are made guilty of misdemeanor. Section 8085 includes such places as nuisances, and authorizes persons injuriously affected thereby to maintain actions for injunction and abatement. These statutes had been in force for years prior to the act of 1913. Likewise, at an early date, equity assumed jurisdiction to enjoin and abate public nuisances. As said by Mitchell, J., in Township of Hutchinson v. Filk, 44 Minn. 536, 47 N. W. 255,

"It is now well settled that a court of equity may, in a proper case, take jurisdiction of public nuisances in civil actions for their abatement, and to enjoin their maintenance.

"This jurisdiction is grounded upon the greater efficacy and promptitude of the remedies administered in such actions, enabling the court to restrain nuisances that are threatened or in progress, as well as to abate those already in existence, and effect their final suppression by injunction, which will often also prevent a multiplicity of suits."

See also 35 Am. St. 674, note.

Furthermore, eliminating the questions involved in the constitu-

tional guaranty of jury trial, the broad power of the legislature to extend the bounds of equity jurisdiction as well as to regulate procedure, is well established. 16 Cyc. 29. Hence it cannot be doubted that, independently of statute, jurisdiction exists in equity to abate nuisances, or that the legislature had power, subject to constitutional limitations, to enlarge the same so as to include the general subject-matter of the act here involved; nor can the general justification of the act as a matter of legislative discretion under the police power fairly be questioned, for it is a matter of common knowledge that the criminal acts cited did not result in efficient repression or suppression of the evil aimed at. It is idle, therefore, to claim that the legislature intended to enact another penal statute. Likewise, it is manifest that any successful assault upon the act must be directed against some one or more of its details as to procedure or relief as contravening constitutional guaranties; and in this connection we must not be unmindful of the presumption that the legislature intended to keep within constitutional bounds and enact a valid law, nor of the rule that, unless a statute is unconstitutional beyond a reasonable doubt, it must be sustained. 3 Dunnell, Minn. Dig. §§ 8929, 8931.

2. Coming now to consideration of the several grounds of attack made upon the act, we will first discuss defendants' claim of right to jury trial, their contention in this connection being that the provisions relating to forfeiture and sale of personalty, closing the house for one year, and the $300 penalty, are penal, prescribing punishments for offenses, or else, if not penal, are of such character that, in either event, they were entitled to trial by jury, which the legislature could not dispense with, either by clothing prosecution and punishment for an offense in the livery of equity or by giving equitable form to legal relief. To sustain this position, they cite Kennedy v. Raught, 6 Minn. 155 (235); State v. West, 42 Minn. 147, 43 N. W. 845; Board of Co. Commrs. of Mille Lacs County v. Morrison, 22 Minn. 178, and cases from other jurisdictions to like effect, and also decisions of this court regarding the right to jury trial in civil actions. We will not, however, review these cases;

for, conceding they establish the general propositions to which they are cited, and that the provisions attacked could not be sustained as penal enactments, they are nevertheless clearly distinguishable and are not inconsistent with the conclusions which we have reached.

The constitutional provision regarding right to jury trial merely preserves such right as it existed when the Constitution was adopted. Peters v. City of Duluth, 119 Minn. 96, 101, 137 N. W. 390, 41 L.R.A.(N.S.) 1044. It is inapplicable to actions based upon equitable causes of action or to obtain equitable relief alone. Dunnell, Minn. Prac. § 582; Koeper v. Town of Louisville, 109 Minn. 519, 124 N. W. 218. Since, therefore, a review of the act as a whole leads irresistably to the conclusion that its purpose is repression of the evil, to be worked out by equitable attack upon the property of those engaged in or abetting it, and not punishment of the offenders by infliction of personal penalties, except as for contempt of court, the contention that, because the thing itself—the lewd place—declared a nuisance by the act, would, in its maintenance, have constituted a criminal offense at the time of the adoption of the Constitution, a jury trial is indispensable, has no foundation, and is thus answered by the authorities:

"The fallacy of the argument lies in part in disregarding the distinction between a proceeding to abate a nuisance, which looks only to the property that in the use made of it constitutes the nuisance, and a proceeding to punish the offender for the crime of maintaining a nuisance. These two proceedings are entirely unlike. The latter is conducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by the rules which relate to property, and its only connection with persons is through property in which they may be interested. That which is declared by a valid statute to be a nuisance, is deemed in law to be a nuisance in fact, and should be dealt with as such. The people, speaking through their representatives, have proclaimed it to be offensive and injurious to the public, and the law will not tolerate it. The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate the nuisance." Carle-

ton v. Rugg, 149 Mass. 550, 553, 22 N. E. 55, 5 L.R.A. 193, 14 Am. St. 446.

So also, in State v. Murphy, 71 Vt. 127, 136, 41 Atl. 1037, 1038, the court said:

"The respondent contends that the statute is in conflict with the provisions of the constitution of the state, particularly Article X of the declaration of rights, which provides, 'That in all prosecutions for criminal offenses, a person hath a right to  *  *  *  a speedy public trial by an impartial jury of his country;  *  *  *  nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers.' This claim is made, disregarding the distinction between a proceeding to abate a nuisance, which relates simply to the property which in its use constitutes the nuisance, and a prosecution of the respondent for the crime of maintaining it."

And in Mugler v. Kansas, 123 U. S. 623, 670, 8 Sup. Ct. 273, 302, 31 L. ed. 205, Mr. Justice Harlan said:

"The state having authority to prohibit the manufacture and sale of intoxicating liquors for other than medical, scientific, and mechanical purposes, we do not doubt her power to declare that any place, kept and maintained for the illegal manufacture and sale of such liquors, shall be deemed a common nuisance, and be abated, and, at the same time, to provide for the indictment and trial of the offender. One is a proceeding against the property used for forbidden purposes, while the other is for the punishment of the offender."

See, also, State v. Saunders, 66 N. H. 39, 25 Atl. 588, 18 L.R.A. 646, where the earlier cases are exhaustively reviewed, and State v. Marshall, 100 Miss. 626, 56 South. 792, Ann. Cas. 1914A, 434.

Defendants attack particularly the three hundred dollar penalty imposed by section 8, on the ground stated, insisting that penalties are regarded as punishments for infractions of law, and statutes imposing them as penal. But, in considering this section, and all others, we are bound to hold that if the language used is reasonably susceptible of two constructions, one rendering the enactment con-

stitutional, and the other not, the former must be adopted, though the latter be the more natural. 3 Dunnell, Minn. Dig. § 8931. While the act designates the three hundred dollar exaction as a "penalty," the same section clearly indicates it is to be imposed, treated and collected as a tax. There is no magic in words, and the use of "penalty" is not decisive. Terminology is not necessarily decisive, and the legislature might well have been in doubt as to the appropriate word with which to designate the exaction. After all, the legislative intent is what we seek, and the nature of the thing is more important than its name. In Hodge v. Muscatine County, 196 U. S. 276, 25 Sup. Ct. 237, 49 L. ed. 477, the court had under consideration the Iowa cigarette law, whereby a tax of three hundred dollars per annum was assessed "against every person * * * and upon the real property, and the owner thereof," whereon cigarettes, etc., were sold, or kept with intent to sell, the same to be a perpetual lien upon both personal and real property used in connection with the business. The supreme court of Iowa sustained the law (Hodge v. Muscatine County, 121 Iowa, 482, 488, 96 N. W. 968, 970, 67 L.R.A. 624, 104 Am. St. 304), observing in the course of its opinion:

"It (the three hundred dollars) is manifestly a tax upon the traffic which the legislature saw fit to impose, not for the purpose of giving countenance to the business, but as a deterrent against engaging therein. * * * Indeed, we think it may fairly be said to be a tax upon the business. That a tax is imposed for the double purpose of regulation and revenue is no reason for declaiming it invalid."

The Supreme Court of the United States approved this holding, saying; [196 U. S. page 279, 25 Sup. Ct. 239, 49 L. ed. 477]:

"It is not easy to draw an exact line of demarcation between a tax and a penalty, but in view of the fact that the statute denominates the assessment a 'tax,' and provides proceedings appropriate for the collection of a tax, but not for the enforcement of a penalty, and does not contemplate a criminal prosecution, we cannot go far afield in treating it as a tax rather than a penalty.

\* \* \* The act itself provides in terms that such tax shall be in addition to all other taxes *and penalties,* and elaborate provision is made for its enforcement. The mere fact that the charge, whatever it may be, is made a lien upon the real estate and a personal claim against the landlord indicates that it is in the nature of a tax rather than a penalty."

We consider this case in point and follow its lead, being impelled to such course both by reason and by the authoritative pronouncement of the Federal Supreme Court upon an exaction to which the assessment imposed by section 8 is closely analogous in so many of its essential features, including failure to provide proceedings appropriate for the enforcement of a penalty, particularly in that no punishment is imposed for nonpayment of the assessment.

The act as a whole differs in no material respect from the numerous statutes regulating liquor traffic by equitable actions for injunction and abatement, universally held valid notwithstanding denial of jury trial thereunder. We hold it not penal, which disposes of defendants' main contention regarding right to trial by jury, and likewise of their points based upon the constitutional provisions relating to excessive fines and unusual punishments, the right to be confronted by witnesses, testifying against one's self, bills of attainder, and *ex post facto* laws. As to their claim of right to jury trial, even if the action be held civil in all its details, it is sufficient to say that in its main features the proceeding is unquestionably equitable, and that when a court of equity properly assumes jurisdiction of a cause for one purpose it acquires it for all and grants full relief. 1 Dunnell, Minn. Dig. § 3138; 1 Pomeroy, Eq. § 237; State v. Marshall, supra.

3. It is claimed that section 7 violates Const. art. 1, § 8, providing that every person "ought to obtain justice freely and without purchase," etc., in that the right of the owner of the premises to appear for the purpose of obtaining the release of his property, is unduly fettered by imposition of conditions as to giving of bond and payment of costs. We are not now required to determine the validity of this part of the section. It relates merely to a collateral

matter, and, if void, would not affect the other provisions. It is unnecessarily drastic, and probably invalid. See Doherty v. Ryan, 123 Minn. 471, 144 N. W. 140.

4. Defendants invoke article 1, section 7, of the Constitution, which provides that no person shall be deprived of life, liberty, or property, without due process of law, and section 11, providing that no conviction shall work forfeiture of estate. It is not necessary to consider the latter; for, as we have seen, proceedings under the act are not criminal, and it is settled that by due process of law specific forfeitures may be imposed for specific acts, including even total destruction of property *per se* innocent, when such fairly tends and is reasonably necessary to accomplish a legitimate purpose under the police power. Daniels v. Homer, 139 N. C. 219, 51 S. E. 992, 3 L.R.A.(N.S.) 997, and note. See, also, Patsone v. Pennsylvania, 232 U. S. 138, 34 Sup. Ct. 281, 58 L. ed. 539.

As to due process of law, defendants claim that summary forfeitures are imposed without sufficient notice and hearing. We do not, however, so construe the act. It prescribes notice to everyone and makes provision for a full hearing before final judgment upon and disposition of the matters involved; nor does it authorize relief against anyone not proved to be a participant, either active or by consent or acquiescence. The provision of section 5, making lack of reasonable care or diligence equivalent to notice of the uses to which the property is being put, does not negative this conclusion, for ignorance due to negligence is the equivalent of notice. Furthermore, the owner of property is presumed to know the business conducted thereon. Hodge v. Muscatine County, supra.

5. Finally, is the act in its remedial details a proper exercise of police power? The subject-matter being within such power, the test is reasonableness, which involves a dual limitation, positive and negative, namely, adaptability to the end sought and absence of excessiveness—the measure must, on the one hand, tend to accomplish the purpose of its adoption, and, on the other, must not go beyond the reasonable demands of the occasion. In our opinion the remedies provided by the act stand the test. "A large discretion is necessarily

vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." State v. Wagener, 77 Minn. 483, 495, 80 N. W. 633, 635, 46 L.R.A. 442, 77 Am. St. 681.

Upon all points involved in the cases before us, the act is sustained as constitutional. The objections based upon the effect accorded evidence of the general reputation of the place in establishing the existence of the nuisance, etc., and the presumptions declared in section 5, more properly belong to the discussion in State v. New England F. & C. Co. supra, page 78, 147 N. W. 951.

Judgments reversed in so far as they fail to award plaintiffs, as against the answering defendants, the additional relief prayed; and the trial court is directed to proceed in accordance with this opinion.