STATE EX REL. JAMES ROBERTSON v. MARY B. WHEELER.[1]

December 10, 1915.

Nos. 19,335—(2).

**Abatement act — knowledge of owner.**

1. The abatement act (Laws 1913, c. 562) does not intend that the owner, unless he has notice of the maintenance of the nuisance, shall be subject to the provision that the premises on which the abated nuisance was conducted shall not be used for any purpose for a year.

**Same — penalty not a tax.**

2. The penalty exacted by the act is not a tax within article 4, § 10, of the Constitution, providing that all bills for raising revenue shall originate in the House.

**Same — not unconstitutional.**

3. Section 7 of the act is not, because of the provision requiring the giving of a bond if the premises are opened within a year, violative of

[1]Reported in 155 N. W. 90.

the declaration of the bill of rights that every person ought to obtain justice freely and without purchase; nor of the due process of law provisions of the state or Federal Constitution.

**Same — evidence.**

4. There was evidence that a disorderly house was maintained by the defendant Stroup; but, in proof of the fact and in proof of the defendant Wheeler's knowledge of it, the court admitted prejudicial evidence.

**Same — knowledge of agent.**

5. In the abatement proceeding the owner is charged with the knowledge of his agent in charge of the property.

**Same — knowledge of owner.**

6. The holding that the owner must have notice before he can be subjected to the provisions of the act does not prevent its effective working.

Action in the district court for Hennepin county by the county attorney against J. Stroup, C. F. Merriman, Mary B. Wheeler and others to abate a nuisance. The case was tried before Fish, J., who made findings abating the nuisance, perpetually enjoining defendants from further use of the building as a house of ill fame, directing a sale of the fixtures and movable property by the sheriff, imposing a fine of $300, and ordered that the second and third floors of the building be closed for the period of one year. From an order denying the motion of defendant Mary B. Wheeler for amended findings and conclusions of law or for a new trial, she appealed. Reversed.

*Thomas Kneeland,* for appellant.

*John M. Rees,* County Attorney, and *K. T. Dahlen,* Assistant County Attorney, for respondent.

PER CURIAM.

Action under Laws 1913, p. 815, c. 562,[1] to abate a nuisance. There were findings for the plaintiff against the defendant Stroup and the defendant Mary B. Wheeler. The defendant Wheeler appeals from the order denying her motion for a new trial. Stroup does not appeal.

The act in question is crudely drawn and puts the prosecuting officers and the trial courts to labor which might have been avoided. It was

[1][G. S. 1913, §§ 8717-8726].

exhaustively considered in State v. Ryder, 126 Minn. 95, 147 N. W. 953, and State v. New England F. & C. Co. 126 Minn. 78, 147 N. W. 951, 52 L.R.A.(N.S.) 932, and many of its provisions were construed and some were considered upon constitutional objections made to them. The present case, however, involves some further consideration.

1. The act does not intend that an owner shall be subject to the provision that the premises shall not be used for any purpose for a year, or to the so-called penalty, unless he is with notice of the nuisance. This is evident from the numerous provisions throughout the act in reference to knowledge in the owner or of notice to him. We do not mean to say that the act might not constitutionally so provide. We say that it does not so provide.

2. In State v. Ryder, supra, it was held that the provision regarding the $300 penalty was not unconstitutional, in that it deprived the defendant of the right to trial by jury. Nothing more need be said upon that point. It is now claimed that since the $300 penalty is something in the nature of a tax, and as the act originated in the Senate, it is unconstitutional within article 4, § 10, of the Constitution, providing that all bills for raising revenue shall originate in the House.

It is provided that the so-called "penalty" shall be collected as a tax is collected. It is extended against the property. When collected it is to be applied in payment of the expenses incident to the abatement. The exaction of the $300 is in aid of the equitable proceeding for the abatement of the nuisance. The act might have called it costs had it chosen. It called it a penalty and provided for its collection as taxes are collected. It might have called it costs and made it a direct lien collectable in some other way. We are very clear that it is not a tax within the meaning of the constitutional provision requiring that bills for the raising of revenue shall originate in the House.

3. In State v. Ryder, supra, it was suggested that section 7 of the act violated the provision of the bill of rights to the effect that any person "ought to obtain justice freely and without purchase." Const. art. 1, § 8. This suggestion came in response to the claim made in the briefs that the act was unconstitutional under the provision quoted, because it put upon the owner of the premises the burden of giving a large bond and paying the costs. We have considered section 7 of the

act in connection with the provision of the Constitution. It does not seem that section 7 was intended to impose the giving of a bond and the payment of costs as a condition to the interposition of a defense by the owner. It was intended that, if the court found that a nuisance was maintained and therefore the property subject to closing for a year, then the owner might, by paying costs and giving the bond, have the provision as to the prohibition of the use of the premises for any purposes for a year released. We do not think it violative of the provision referred to.

It is also claimed that the provision is so drastic that it violates the due process of law provisions of the Federal and state constitutions. The statute is drastic. We cannot say that it is unconstitutional for this reason. It is a police measure. It is to be presumed that the legislature, in determining what was necessary to work an abatement, made the proper investigation and embodied a proper conclusion in the statute. It doubtless intended to secure permanent abatement by the provision for one year idleness of the premises, and to prevent the immediate use of the premises as a nuisance at the same place in the name of some one else.

4. The court found that a nuisance was maintained by the defendant Stroup. He was convicted of running a disorderly house. The state sought to introduce evidence of general reputation through the testimony of Kelly, the Burns detective. He was incompetent to testify upon general reputation. He obtained some information from taxidrivers. This was substantially all. It is likely that his testimony on cross-examination as to his actual connection with the premises was sufficient to establish a nuisance in fact. Evidence of general reputation from a police officer who was not qualified to testify was received. He had not been stationed in that region at a time material to the litigation, and whatever knowledge he had was at a time quite long prior thereto under a different occupancy. We cannot say that the evidence is so conclusive that it was not prejudicial error to receive the evidence as to general reputation.

5. It is claimed by the defendant, Mrs. Wheeler, that she was without notice that a nuisance was maintained. That she had no actual notice or any kind of personal notice is without question. She was

an elderly lady, 88 years of age, and lived at Excelsior. Her son had charge of the rental of the property. Of course she is bound by the knowledge of her agent. An owner cannot leave his property in the hands of an agent and avoid abatement proceedings by showing lack of personal knowledge. If his agent knows, he knows. And an agent cannot be blind to the surroundings and fail to observe what all others see. There were some suspicious circumstances.

6. Counsel for the state fear that a holding that notice of the nuisance must be *shown in the owner* before the penalties of the act can be imposed upon him, will render the abatement act ineffective. We do not share this fear. The act is drastic, and, while cumbersome and clumsily drawn, it can be made of effective use if properly administered. The feature which gives it effect is the equitable character of the proceeding with the statutory remedies affixed. The proceeding is put in the district court. There is no jury. General reputation is made evidence both of the fact of nuisance and of knowledge in the owners. The purpose of the act is to strike down the nuisance by attacking the property in which it is conducted. With such an act with which to proceed, the prosecuting officers cannot well say that they have no effective remedy. The district courts will proceed fairly both to the state and to the defendants. If a nuisance such as the act contemplates exists, the prosecuting and administrative officers can prove it under the liberal provisions of the act. They should appreciate that they must produce evidence from which the court can make appropriate findings. The courts cannot prosecute. And the case before us seems to be one where the prosecuting officers, if there was in fact a nuisance maintained of which the defendant had notice, should have been of greater aid to the trial court.

Order reversed.