191 A.2d 642 (1963)
The STATE of Delaware, on the relation of David P. BUCKSON, Attorney General of the State of Delaware, Plaintiff,
v.
Joseph ROSSITTO et al., Defendants.
Court of Chancery of Delaware, New Castle.
April 8, 1963.
*643 Thomas Herlihy, III, Deputy Atty. Gen., for plaintiff.
Victor J. Colombo, Wilmington, for defendant, Peter C. Olivere, Inc.
Robert C. O'Hora and John P. Daley, Wilmington, for defendants, Rossitto, Zuchowski, Stant, Smallwood, Morabito, Rosen and Gross.
SEITZ, Chancellor.
The State brought this action under 10 Del.C. §§ 7101-7109 to abate a nuisance alleged to exist at 703 Orange Street, Wilmington, Delaware. The conduct complained of is illegal gambling, and the named defendants are charged with "maintaining a nuisance" within the meaning of the statute. A restraining order was issued pursuant to the prayers of the complaint. Subsequently, after service of process upon each of the named defendants, a hearing was held on the State's application for a temporary injunction and the court orally indicated that a preliminary injunction would issue. Whereupon the State, having shown the requisite notice of the hearing to the owner of 703 Orange Street, the defendant Peter C. Olivere, Inc. ("corporate defendant"), asked that a closing order be entered as provided by § 7105(g) of the statute. The court deferred the entry of its order and granted the defendant leave to file a motion opposing the State's prayer for a closing order. The individual defendants, Rossitto, Zuchowski, Stant, Smallwood, Morabito, Rosen and Gross have moved to dismiss the complaint and to vacate the orders of the court. This is the decision on all these motions.
I turn first to the motion of the corporate defendant seeking a denial of the State's application for an order closing the premises. The building is a three-story structure. The bottom floor is suited for use as a store and was the area where for present purposes it may be said that the illegal gambling was taking place. It does not physically communicate with the upper two floors which are apartments and have a separate entrance from the outside. One of these apartments is presently occupied by a tenant who it is claimed has had no contact with the persons charged by the State with engaging in illegal gambling. The corporate defendant claims it orally leased the premises to the Shipley Social Club, a Delaware corporation which is not a party to this suit. It disclaims any knowledge of unlawful conduct on the premises.
The corporate defendant has briefed three arguments in connection with its present motion. Only such arguments are considered here. First, it is contended that an order *644 closing the premises pursuant to 10 Del.C. § 7105(g) and 7107(a) will deprive the corporation of property without due process of law if the premises may not be used for "lawful purposes" during the time the order is in force. In connection with this first argument, it is said also that the statutory provisions referred to do not by implication require a closing order of such a broad scope. Secondly, it is argued that the issuance of a closing order is within the discretion of the court and that such an order should not be issued in this case. Finally, the corporate defendant urges that a closing order, if issued, should apply only to the first floor of the premises, in view of the physical relationship of that floor to the others and the use exclusively of that floor for the alleged unlawful conduct.
The court is only called upon at this time to decide the validity and application of the closing order provisions as they apply at the temporary injunction stage. Thus § 7107 (a) is not here considered. The controlling provision, § 7105(g), is as follows:
"(g) If at the time of granting a temporary injunction, it further appears that the person owning, in control, or in charge of the nuisance so enjoined has received five days' notice of the hearing, and unless such person shows to the satisfaction of the Court that the nuisance complained of has been abated, or that such person proceeded forthwith to enforce his rights under the provisions of this chapter, [i. e., filing a bond under § 7105(h) conditioned on immediate abatement of the nuisance] the Court shall forthwith issue an order closing the place against its use for any purpose until the final decision is rendered on the application for a permanent injunction. Such order shall also continue in effect for such further period the restraining order provided for in this section if already issued, or, if not so issued, shall include such an order restraining for such period the removal or interference with the personal property and contents located thereat or therein as provided in this section, and such restraining order shall be served and the inventory of such property shall be made and filed as provided in this section."
Two points require preliminary attention. The corporate defendant argues that the closing provision of § 7105(g) is not mandatory and further that it does not by implication require a closing of the premises for all purposes. I can find no basis for construing the word "shall" to be permissive in the context, nor does § 7105(g) appear to permit a selective application of the closing order to certain purposes and not to others. Thus, the statutory language I think leaves little room to doubt that unless the conditions specified in the statute are met, a closing order must issue and thereafter the "place" is not to be used at all during the time such order is in effect.
Next, I come to the main point raised by the corporate defendant, viz., the constitutionality of the closing order provision. Padlocking of the premises after the issuance of a permanent injunction is a time-honored remedy in cases of public nuisance for enhancing the effectiveness of the court's decree. It has uniformly been held that such an order is a valid exercise of the police powers of the State and is consistent with due process of law. State ex rel. Wilcox v. Ryder, 126 Minn. 95, 147 N.W. 953, 5 A.L.R. 1449; compare United States v. Boynton, 6 Cir., 297 F. 261. The question here, however, is whether such remedy is unconstitutional as to this defendant when applied at the temporary injunction stage or to an owner which claims it has no actual knowledge of the unlawful activity purportedly taking place on its property.
Does the statute in its application to this defendant deprive the corporation of its constitutional rights? A property owner is not affected by the closing order provision of the statute unless he has received adequate notice of the proceeding at which such order may be issued, and the order may not issue unless the court is *645 satisfied that a nuisance exists under principles governing the granting of preliminary injunctions generally. See State ex rel. Bove v. Amato, Del.Ch., 188 A.2d 243. Where such a finding is made after notice and hearing to the interested parties, the closing order appears to be a reasonable method of lessening the likelihood of continuation of what in all reasonable likelihood will be found after final hearing to be a public nuisance. The statute does not stop there, however, because it enables the property owner to show to the satisfaction of the court that the nuisance has been abated or to post a bond conditioned on his undertaking to abate the nuisance. In either such case the court will refrain from issuing the closing order. Thus, even if a property owner were without knowledge of the alleged nuisance prior to his receiving notice of the hearing or hesitated to take action against his tenant prior to the State's establishing a prima facie case, he would still have an opportunity to avoid an order closing the premises by diligently taking remedial steps. The statute in my opinion strikes a nice balance between the power of the State to bar temporarily the use of premises which it has shown, to a reasonable probability, will be abated as a nuisance after final hearing and the rights of the owner of such property to avoid such relief at the preliminary injunction stage by demonstrating his innocence and his willingness to eliminate the offensive condition.
I am satisfied therefore that the closing provisions do not deprive the corporate defendant of its constitutional rights under the due process clauses and that the State's application for a closing order should in part be granted here. The corporate defendant was served with process as provided by statute and upon the granting of the temporary injunction ought to have shown either that the nuisance was abated or the bonding provisions complied with. A reasonable construction of the statute affords such an opportunity if requested. Since it has undertaken neither step and the court has found preliminarily the existence of illegal gambling on the premises, it follows that a closing order will be issued.
At the preliminary stage, however, the closing order will be limited to the first floor of 703 Orange Street, since at this stage at least it has not been shown that the upper floors were involved in the alleged unlawful activity and the lack of physical communication makes it unlikely that they will be so used pending a final hearing. I believe the court has some flexibility, at least at the preliminary injunction stage, in determining what physical area falls within the statutory definition of the "place" constituting the nuisance.
The motion of the other defendants to dismiss the complaint and to vacate the court's orders rests on their contention that the State has failed to adduce sufficient evidence for the court at this time to issue a temporary injunction. Many of the points raised here were dealt with in State ex rel. Bove v. Amato, cited above. The court there indicated that the State need only show a reasonable probability of ultimate success in order to obtain preliminary relief. Suffice it to say that the evidence of general reputation and of circumstances lending themselves to a strong inference that illegal gambling is taking place at 703 Orange Street is such as to warrant denial of the present motion of these defendants.
One point I think merits additional consideration here however. Several of the named defendants claim that they cannot be charged with "maintaining a nuisance", inasmuch as the State's affidavits indicate that at best they have been found on the premises on a single occasion. Their contention in this regard would appear to result from a misunderstanding of the nature of the proceeding. Under § 7101 a "nuisance" is the "place" where certain proscribed activities are carried on. The remedies provided by the statute are designed to prevent the designated place from being used in the future in the offending manner. Thus, "maintaining a nuisance" under § *646 7102 is a term of art. It purports to encompass all of the persons who may in any way contribute to the fact that a particular "place" constitutes a "nuisance". The statute is designed to eliminate not only the continual actions of the few but also the sporadic acts of the many, all of which together give the place its offensive character. The State has demonstrated a reasonable probability of success in showing ultimately that 703 Orange Street is a "nuisance". It has shown that all of the defendants fall within one of the categories of § 7102. Thus, it follows that these persons are "guilty of maintaining a nuisance" within the terms of the statute and are subject to the requested relief. The motion whether viewed as a motion to dismiss or for summary judgment is denied.
Several other contentions of these defendants have either been abandoned by them or deferred until a later time. Consequently, they have not been considered here.
Present orders on notice.