**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1637**

Danna Rochelle Back, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 18, 2016**
**Reversed and remanded**
**Hooten, Judge**
**Dissenting, Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-07-005374

Daniel J. Bellig, Joseph A. Gangi, Farrish Johnson Law Office, Chtd., Mankato, Minnesota
(for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Smith,

John, Judge.[*]

**S Y L L A B U S**

I.      In determining whether a person who was previously convicted of second-

degree manslaughter based on culpable negligence is an "exonerated" person under

Minnesota Statutes section 590.11, subdivision 1(1)(i) (2014), and is therefore potentially

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

eligible for compensation under the Minnesota Imprisonment and Exoneration Remedies Act, Minnesota Statutes sections 611.362 to 611.368 (2014), a reversal of the conviction on the ground that the person owed no legal duty to the victim or the perpetrator is a reversal "on grounds consistent with innocence" within the meaning of section 590.11, subdivision 1(1)(i).

II.    Minnesota Statutes section 590.11, subdivision 1(1)(i), violates the Equal Protection Clause of the Minnesota Constitution by defining "exonerated" to require not only the vacation or reversal of a judgment of conviction "on grounds consistent with innocence," but also the dismissal of the charges by a prosecutor.

**O P I N I O N**

**HOOTEN**, Judge

After the Minnesota Supreme Court reversed her conviction of second-degree manslaughter based on culpable negligence, appellant Danna Rochelle Back petitioned for an order under Minn. Stat. § 590.11 (2014) declaring her eligible to file a claim for compensation under the Minnesota Imprisonment and Exoneration Remedies Act (MIERA). The postconviction court denied the petition, concluding that Back does not meet the definition of "exonerated" under section 590.11, subdivision 1(1)(i), because the prosecutor did not dismiss the charges after the reversal. The postconviction court also rejected Back's argument that the statutory requirement of prosecutor dismissal violates her equal protection rights. Because we conclude that the statute violates Back's equal protection rights under the Minnesota Constitution and that she is an "exonerated" person under the statute, Back meets the initial eligibility requirement under section 590.11,

2

subdivision 1(1)(i), and is entitled to have the district court consider the merits of her petition under the second eligibility requirement under subdivision 3 of the statute. Accordingly, we reverse and remand for further proceedings under section 590.11.

## FACTS

The underlying facts are as follows. Back and the victim, D.H., dated off and on for several years. *State v. Back*, 775 N.W.2d 866, 867 (Minn. 2009). Their relationship deteriorated, and by the summer of 2006, Back moved out of the house that they owned. *Id.* During the summer of 2006, Back dated Nicholas Super as well as D.H. *Id.* Back was aware that there was significant tension between Super and D.H., as Super had threatened D.H. several times with a gun and had once driven by D.H.'s house and fired shots at the garage. *Id.* Back knew that Super was "known to pull his gun out on anybody." *Id.* at 868. Around 3:00 a.m. on January 1, 2007, Back decided to go to D.H.'s house. *Id.* at 867. After calling several other people for a ride, Back called Super, who agreed to bring her to D.H.'s house. *Id.* Super dropped Back off at D.H.'s house and remained outside the house. *Id.* at 868. In her police interview, Back stated that she believed Super would drive away after dropping her off. *Id.* Back got into an argument with D.H., which eventually spilled onto the deck. *Id.* Super intervened and shot and killed D.H. *Id.*

A grand jury indicted Back on two counts of aiding and abetting first-degree murder and one count of aiding and abetting second-degree intentional murder for her role in D.H.'s death. *Id.* Back pleaded not guilty, and a jury trial was held in August 2007. During the trial, the district court granted the state's motion to dismiss one of the first-degree murder charges. *See id.* The district court also granted Back's motion for acquittal on the

3

other two charges and granted the state's motion to amend the complaint to add the lesser included offense of second-degree manslaughter based on culpable negligence. *Id.* at 868–69. The jury found Back guilty of second-degree manslaughter, and this court affirmed the conviction in an unpublished decision. *Id.* 867, 869. In December 2009, the Minnesota Supreme Court reversed the conviction, holding that Back was not culpably negligent as a matter of law because there was no evidence that she had a special relationship with either D.H. or Super that would impose upon her a legal duty to protect D.H. or to control Super. *Id.* at 872; *see also id.* at 870 ("A defendant cannot be negligent, culpably or otherwise, unless the defendant has a duty that he or she breached."). The supreme court did not remand to the district court for further proceedings. *Id.* at 872.

On December 5, 2014, Back filed a postconviction petition requesting an order declaring her eligible for compensation based on exoneration and alternatively arguing that section 590.11 violates her equal protection rights. The postconviction court denied the petition, concluding that Back is not "exonerated" as that term is defined by section 590.11 and that the statute does not violate her equal protection rights. This appeal followed.

**ISSUES**

I.      Is the reversal of Back's conviction of second-degree manslaughter based on culpable negligence, on the ground that she owed no legal duty to the victim or the perpetrator, a reversal "on grounds consistent with innocence" within the meaning of Minn. Stat. § 590.11, subd. 1(1)(i)?

II.     Does Minn. Stat. § 590.11, subd. 1(1)(i), violate the Equal Protection Clause of the Minnesota Constitution by defining "exonerated" to require not only the vacation or

4

reversal of a judgment of conviction "on grounds consistent with innocence," but also the dismissal of the charges by a prosecutor?

## ANALYSIS

**I.    The reversal of Back's conviction of second-degree manslaughter based on culpable negligence on the ground that she owed no legal duty to the victim or the perpetrator is a reversal "on grounds consistent with innocence" within the meaning of Minn. Stat. § 590.11, subd. 1(1)(i).**

The parties dispute whether the supreme court's reversal of Back's conviction of second-degree manslaughter based on culpable negligence is a reversal "on grounds consistent with innocence," one of the requirements for establishing that she is an "exonerated" person within the meaning of section 590.11, subdivision 1(1)(i).   Back argues that her conviction was reversed on the ground that she owed no legal duty to the victim or the perpetrator and that, therefore, her conduct was not criminal and her conviction was reversed on grounds consistent with innocence as a matter of law.  The state contends that Back's conviction was reversed for insufficient evidence based on the state's failure to prove sufficient facts showing a legal duty and that such a reversal is not on grounds consistent with innocence.   Section 590.11 and the MIERA are new statutes, having been enacted in 2014, and the interpretation of the phrase "on grounds consistent with innocence" is a matter of first impression.

Statutory interpretation is a question of law, which we review de novo.  *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015).   "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."  Minn. Stat. § 645.16 (2014).  When interpreting a statute, "technical words and phrases and such

5

others as have acquired a special meaning . . . are construed according to such special meaning or their definition." Minn. Stat. § 645.08(1) (2014). Non-technical words and phrases "are construed according to rules of grammar and according to their common and approved usage." *Id.* "The first step in statutory interpretation is to determine whether the statute is ambiguous on its face." *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014). A statute is ambiguous only if its language is subject to more than one reasonable interpretation. *Id.* If a statute is unambiguous, our role is to apply the plain meaning of the statutory language. *Id.* But, if a statute is ambiguous, we may consider the factors set forth by the legislature to ascertain its meaning. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). These factors include:

> (1) the occasion and necessity for the law;
> (2) the circumstances under which it was enacted;
> (3) the mischief to be remedied;
> (4) the object to be attained;
> (5) the former law, if any, including other laws upon the same
> or similar subjects;
> (6) the consequences of a particular interpretation; [and]
> (7) the contemporaneous legislative history[.]

Minn. Stat. § 645.16.

In order to interpret the phrase "on grounds consistent with innocence" in section 590.11, subdivision 1(1)(i), we must first examine the entirety of section 590.11 and how it operates in relation to the MIERA. *See State v. Struzyk*, 869 N.W.2d 280, 287 (Minn. 2015) ("We read and construe a statute as a whole and interpret each section in light of the surrounding sections to avoid conflicting interpretations.").

**A.   Minn. Stat. § 590.11 governs who is eligible to file a claim for compensation based on exoneration under the MIERA.**

The MIERA provides compensation to eligible persons who served time in prison for a crime that they did not commit. *See generally* Minn. Stat. §§ 611.362–.368. But, a person can file a claim for compensation under the MIERA only if the person first receives an order under section 590.11 determining that she is eligible for compensation based on exoneration. Minn. Stat. § 611.362, subd. 1. Thus, the first step to receiving compensation under the MIERA is to petition for such an order in the district court where the conviction was obtained. Minn. Stat. § 590.11, subd. 2.

Section 590.11 defines "exonerated" to mean that:

> (1) a court of this state:
> (i) *vacated or reversed a judgment of conviction on grounds consistent with innocence and the prosecutor dismissed the charges*; or
> (ii) ordered a new trial on grounds consistent with innocence and the prosecutor dismissed the charges or the petitioner was found not guilty at the new trial; and
> (2) the time for appeal of the order resulting in exoneration has expired or the order has been affirmed and is final.

*Id.*, subd. 1 (emphasis added). Subdivision 1 constitutes an initial eligibility requirement for petitions under section 590.11 because if the petitioner does not meet the definition of "exonerated," then no further proceedings may be had. *See id.*, subd. 3. Subdivision 1(1)(i), which this appeal concerns, defines "exonerated" as those petitioners whose convictions have been vacated or reversed "on grounds consistent with innocence" and whose charges have been dismissed by a prosecutor. *Id.*, subd. 1(1)(i). Subdivision 2 sets forth the procedure for filing a petition. *Id.*, subd. 2.

7

Only petitioners who meet the definition of "exonerated" within the meaning of subdivision 1 are entitled to proceed under subdivision 3, where the district court considers the merits of the petition. *See id.*, subd. 3(b) (providing that only individuals who are "exonerated" persons within the meaning of subdivision 1 have the opportunity to prove innocence). Subdivision 3 constitutes a second eligibility requirement, where the question of innocence is determined by one of two methods. *Id.*, subd. 3. First, under subdivision 3(a), the prosecutor may join the petition by "indicat[ing] that it is likely that the original complaint or indictment would not have been filed or sought or would have been dismissed with the knowledge of all of the circumstances." *Id.*, subd. 3(a). This "conclusively establish[es] eligibility for compensation precluding any further proceedings." *Id.* Second, under subdivision 3(b), if the prosecutor does not join the petition, the district court must determine if the petitioner is entitled to compensation "based on the establishment of innocence if the petitioner establishes that a crime was not committed or that the crime was not committed by the petitioner." *Id.*, subd. 3(b). "Unless the petition and the files and records of the proceeding conclusively show that the petitioner is not eligible for compensation, the [district] court shall set a hearing on the petition and response thereto." *Id.*, subd. 6. In the proceeding under subdivision 3(b), the petitioner bears the burden of proving her innocence by a preponderance of the evidence, unless the district court determines that another standard of proof applies. *See id.*, subd. 3(b) (citing Minn. Stat. § 590.04, subd. 3 (2014)).

Subdivision 4 governs the submission of evidence during the proceeding under subdivision 3(b). *Id.*, subd. 4. The types of evidence that are admissible in such a

8

proceeding include court records related to the conviction and the exoneration, additional evidence offered by either the petitioner or the prosecutor bearing on the petitioner's innocence, and a statement by the victim. *Id.* The district court may also consider "acts by the petitioner that may have contributed to bringing about the conviction and any other offenses that may have been committed by the petitioner in the same behavioral incident."

*Id.*

Subdivision 5 provides that a claim for compensation arises if the petitioner has established innocence by one of the methods in subdivision 3, and

> (1) the person was convicted of a felony and served any part of the imposed sentence in prison;
> (2) in cases where the person was convicted of multiple charges arising out of the same behavioral incident, the person was exonerated for all of those charges;
> (3) the person did not commit or induce another person to commit perjury or fabricate evidence to cause or bring about the conviction; and
> (4) the person was not serving a term of imprisonment for another crime at the same time, provided that if the person served additional time in prison due to the conviction that is the basis of the claim, the person may make a claim for that portion of time served in prison during which the person was serving no other sentence.

*Id.*, subd. 5. These additional requirements limit compensation to innocent persons who suffered compensable harm as the direct and sole result of the wrongful conviction.

If the petitioner meets all of these eligibility criteria, the district court "shall" issue an order pursuant to subdivision 7, notifying the petitioner of her right to file a claim for compensation under the MIERA. *Id.*, subd. 7. Section 590.11, therefore, serves an important gatekeeping function, allowing only those who meet all of its eligibility

9

requirements to file a claim under the MIERA. *See* Minn. Stat. § 611.362, subd. 1 ("A person who receives an order under section 590.11 determining that the person is entitled to compensation based on exoneration may bring a claim for an award under sections 611.362 to 611.368."). If a petitioner receives an order under section 590.11 and subsequently files a claim under the MIERA, a compensation panel appointed by the supreme court calculates the amount of compensation to which the petitioner is entitled. Minn. Stat. § 611.363, subd. 1. Finally, the amount of the award is submitted to the Minnesota Legislature "for consideration during the next session of the legislature." Minn. Stat. § 611.367.

**B.** **The phrase "on grounds consistent with innocence" is ambiguous, but Back's conviction was reversed on grounds consistent with innocence under any reasonable interpretation of the phrase.**

The legal definition of "innocence" is "[t]he absence of guilt; esp[ecially], freedom from guilt for a particular offense." *Black's Law Dictionary* 909 (10th ed. 2014). This definition is unambiguous. But, there is no legal definition of "consistent," and in common usage, the word has various meanings. *See The American Heritage Dictionary of the English Language* 392 (5th ed. 2011) (defining "consistent" as "[i]n agreement; compatible," as well as "not contradictory"); *see also Merriam-Webster's Collegiate Dictionary* 266 (11th ed. 2003) (defining "consistent" as "free from variation or contradiction" and "marked by agreement"); *Oxford Dictionary of English* 372 (3d ed. 2010) (defining "consistent" as "not containing any logical contradictions" and "compatible or in agreement with something"). Given these varied definitions of "consistent," it is unclear whether the legislature intended the phrase "on grounds

10

consistent with innocence" to mean "agrees with innocence" or "does not contradict innocence." Requiring a petitioner to show that the reversal of her conviction "agrees with innocence" would seem to impose a higher burden than to show that the reversal "does not contradict innocence." Both of these interpretations of the statutory phrase, as either agreeing with innocence or not contradicting innocence, are reasonable. Therefore, the phrase "on grounds consistent with innocence" is ambiguous, and we may determine legislative intent by considering the factors set forth by the legislature, including the contemporaneous legislative history. Minn. Stat. § 645.16.

As introduced, both the house and senate bills that were eventually enacted as section 590.11 defined the phrase "on grounds consistent with innocence" as either (1) "exonerated through a pardon or sentence commutation, based on innocence," or (2) "exonerated because the judgment of conviction was vacated or reversed, based on new evidence of actual innocence." H.F. 2925 (2014); S.F. 2480 (2014). By the third engrossment of the house bill and the second engrossment of the senate bill, however, the legislature had removed the requirement of "innocence" or "new evidence of actual innocence," and the amended bills provided that the initial eligibility requirement would be the definition of "exonerated," which included the vacation or reversal of a conviction "on grounds consistent with innocence." H.F. 2925, third engrossment; S.F. 2480, second engrossment.

In hearings before legislative committees, Representative John Lesch, the primary author of the house bill, and Senator Ron Latz, the primary author of the senate bill, stated that the MIERA was designed to compensate people who were convicted of a crime, served

a prison sentence, and were later determined to have not committed that crime based on evidence of innocence. Hearing on H.F. 2925 Before the H. Comm. on Judiciary Finance and Policy (Mar. 26, 2014) (statement of Rep. Lesch); Hearing on S.F. 2480 Before the S. Comm. on the Judiciary (Mar. 13, 2014) (statement of Sen. Latz). In support of the bills, both authors cited two wrongfully convicted persons who would be entitled to compensation under the new law: Koua Fong Lee, who was wrongfully convicted of criminal vehicular homicide after his Toyota Camry accelerated out of his control into another vehicle, and Michael Ray Hansen, who was wrongfully convicted of second-degree murder for killing his infant daughter who actually died of positional asphyxia. It is apparent that section 590.11 and the MIERA were passed in large part in response to these two cases.

The statements made during legislative committee hearings and floor debates indicate that the legislature intended for compensation based on exoneration to be rare and not to be available to persons whose convictions were reversed on technicalities. During a senate floor debate, Senator Latz stated that as far as he knew, only two or three people would currently be eligible for compensation under the statute, including Lee and Hansen. S. Floor Deb. on S.F. 2480 (May 2, 2014) (statement of Sen. Latz). He acknowledged, however, that the law would "open[] up the door for potential eligibility" to others. *Id.*

While the oral legislative history demonstrates the legislature's general purpose and intent in enacting section 590.11 and the MIERA, it does not provide any insight into the changes made during the drafting of subdivision 1 of section 590.11 regarding the definition of "exonerated." There was some discussion of cases involving newly

12

discovered evidence and subdivision 1(1)(ii) of section 590.11, but there was little, if any, discussion of the initial eligibility requirements under subdivision 1(1)(i) or of the meaning of the phrase "on grounds consistent with innocence."

After examining the legislative record, the district court concluded—and the state now argues—that a person is exonerated under section 590.11, subdivision 1(1)(i), only if the person is deemed to be innocent based on newly discovered evidence. This interpretation fails for two reasons. First, as introduced, the bills specifically required a vacation or reversal based on newly discovered evidence, which would have limited eligibility for compensation in the manner that the state and the dissent urge. H.F. 2925; S.F. 2480. Subdivision 1(1)(ii) of the enacted law covers cases where a petitioner is granted a new trial based on newly discovered evidence. *See* Minn. Stat. § 590.11, subd. 1(1)(ii). But, by the final versions of the bills, the legislature had expanded the initial eligibility requirement to cover other cases, namely, outright vacation or reversal of a conviction where no new trial is ordered, as governed by subdivision 1(1)(i) of the statute. *See id.*, subd. 1(1)(i). If we were to adopt the state's and the dissent's interpretation, we would essentially be writing subdivision 1(1)(i) out of the statute, which we may not do. *See* Minn. Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."); *State v. Larivee*, 656 N.W.2d 226, 229 (Minn. 2003) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions, and no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (quotations omitted)).

Second, the requirement of a vacation or reversal based on "innocence," as found in the earlier versions of the bills, was removed, and the enacted version of subdivision 1(1)(i)

13

requires the lesser showing of a vacation or reversal "on grounds *consistent with* innocence." Minn. Stat. § 590.11, subd. 1(1)(i) (emphasis added). If the legislature had intended that a petitioner must establish innocence or actual innocence under subdivision 1, it would have used that language, as it has in another postconviction statute. *See* Minn. Stat. § 590.01, subd. 1(2) (allowing petitioner to seek postconviction relief if petitioner claims that scientific evidence not available at trial establishes petitioner's "actual innocence"), subd. 4(b)(2) (exempting from two-year statute of limitations postconviction claims based on newly discovered evidence if petitioner establishes by clear and convincing evidence that she is "innocent" of offense of conviction) (2014); *see also Rockford Township v. City of Rockford*, 608 N.W.2d 903, 908 (Minn. App. 2000) ("We . . . presume the legislature acts with full knowledge of existing statutes and judicial interpretations of those statutes."). Under the enacted law, the issue of innocence is determined under subdivision 3, not subdivision 1. Minn. Stat. § 590.11, subd. 3. If we were to adopt the state's and the dissent's interpretation, we would be making the proceeding under subdivision 3(b), where the petitioner's "innocence" is determined under the evidentiary standards set forth in subdivision 4, superfluous, which we may not do. *See Larivee*, 656 N.W.2d at 229.

Although some stakeholders may have initially envisioned a statute as narrow as the state and the dissent suggest, that is not the statute that the legislature ultimately passed, and we must give effect to the language of the law that was enacted. *See id.* Our review of the language of the enacted law and the drafting history compels us to conclude that the legislature intended for the initial eligibility requirement, subdivision 1, to be less

14

restrictive than what it had first contemplated. Based on the language and structure of the statute, as well as the written and oral legislative history, we believe that the legislature intended the phrase "on grounds consistent with innocence" to apply narrowly, although not as narrowly as the state and the dissent assert. To decide this case, however, we need not resolve whether the phrase "on grounds consistent with innocence" means "agrees with innocence" or "does not contradict innocence" because we conclude that Back's conviction was reversed on grounds consistent with innocence under any reasonable interpretation of the phrase. *See Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn. 1996) ("[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us."); *see also State v. Vang*, 847 N.W.2d 248, 265 n.9 (Minn. 2014) (same).

On direct appeal, the supreme court reversed Back's conviction of second-degree manslaughter based on culpable negligence, holding as a matter of law that "Back did not have a duty to control Super or to protect [D.H.] from Super, and she therefore was not culpably negligent in failing to control Super's criminal actions." *Back*, 775 N.W.2d at 872. The supreme court relied on the common law principle that there is no duty to control the conduct of a third party to prevent physical harm to another unless there is a special relationship between the actor and the third party that imposes a duty to control the third party, or between the actor and the other that imposes a duty to protect the other from the third party. *Id.* at 871–72. The supreme court gave no indication that the state could have produced any evidence of a special relationship between Back and D.H. or between Back and Super that could have given rise to such a duty. *See id.* at 872 (citing *Delgado v.*

15

*Lohmar*, 289 N.W.2d 479, 483–84 (Minn. 1979) ("Such special relationships exist between parents and children, masters and servants, possessors of land and licensees, common carriers and their customers, or people who have custody of a person with dangerous propensities.")).

The reversal of Back's conviction is different than typical reversals based on insufficient evidence because, in those cases, the defendant's conviction is reversed because *the state did not introduce enough evidence* to establish one or more elements of the offense. Here, in contrast, the supreme court held that *Back did not owe a duty as a matter of law*. *Id.* In doing so, the supreme court explicitly rejected the state's argument that the only issue on appeal was whether there was sufficient evidence as to the foreseeability of harm, explaining that "the question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it." *Id.* at 871 (quotations omitted). "Whether a person has a duty of care is an issue for the court to determine as a matter of law." *Id.* at 869 (quotation omitted); *see also Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999) (stating that existence of special relationship giving rise to legal duty is issue of law that appellate courts review de novo). We hold that the reversal of Back's conviction on the ground that she owed no legal duty to D.H. or to Super is a reversal on grounds consistent with innocence within the meaning of section 590.11, subdivision 1(1)(i).

Consistent with our interpretation of section 590.11, even if a petitioner satisfies the lesser burden of showing that her conviction was vacated or reversed "on grounds consistent with innocence" and that she is otherwise eligible under subdivision 1, she may

16

or may not be able to satisfy the higher burden of proving "innocence" under subdivision 3(b). *Cf. Irwin v. Commonwealth*, 992 N.E.2d 275, 282 (Mass. 2013) (stating, in interpreting similar Massachusetts wrongful conviction statute, that "[t]he threshold matter of eligibility as a member of the class of claimants eligible to pursue relief is . . . separate and distinct from the merits of the claim for relief that a claimant must establish at trial"). Under the evidentiary standard of subdivision 4, the prosecutor may present certain evidence in a subdivision 3(b) proceeding, including "acts by the petitioner that may have contributed to bringing about the conviction and any other offenses that may have been committed by the petitioner in the same behavioral incident." Minn. Stat. § 590.11, subd. 4. The sole purpose of section 590.11, subdivision 1, is to determine whether a petitioner is entitled to have the merits of her petition considered under subdivision 3 of the statute.[1]

**II.     Minn. Stat. § 590.11, subd. 1(1)(i), violates the Equal Protection Clause of the Minnesota Constitution by defining "exonerated" to require not only the vacation or reversal of a judgment of conviction "on grounds consistent with innocence," but also the dismissal of the charges by a prosecutor.**

The state contends that even if Back's conviction was reversed on grounds consistent with innocence under section 590.11, subdivision 1(1)(i), she is nonetheless not

---

[1] The dissent claims that subdivision 1 "includes only definitions" and does not screen out petitions. But, the district court screened out Back's petition at subdivision 1 by concluding that she is not exonerated, explicitly stating that it was not considering Back's arguments under subdivision 3, i.e., the merits of her claim. Moreover, the dissent seems to read subdivision 3 into the definition of subdivision 1. Under the dissent's reasoning, a petitioner must satisfy the standard of subdivision 3 (innocence) in order to satisfy the standard of subdivision 1 (consistent with innocence), which makes subdivision 1 superfluous. In our view, the language and structure of the statute indicate that there are two separate eligibility requirements. Under the clear language of the statute, only a petitioner who meets the definition of "exonerated" under subdivision 1 is entitled to a subdivision 3 proceeding.

17

entitled to have the district court consider the merits of her petition under subdivision 3 because she has not satisfied the second clause of subdivision 1(1)(i), requiring the prosecutor to dismiss the charges. Back argues that because the supreme court reversed her conviction without remanding the case to the district court, there were no charges for a prosecutor to dismiss. In support of this argument, Back relies on the rules of criminal procedure, which direct that an appellate court, upon reversal, *must* "(a) direct a new trial; (b) *vacate the conviction and enter a judgment of acquittal*; or (c) reduce the conviction to a lesser included offense or to an offense of lesser degree." Minn. R. Crim. P. 28.02, subd. 12 (emphasis added). Back also cites *State v. Pass,* which stated that "[o]nce an acquittal [on the merits] occurs, the prosecution is over." 832 N.W.2d 836, 840 (Minn. 2013) (involving double jeopardy issue); *see also State v. Sahr*, 812 N.W.2d 83, 90 (Minn. 2012) (quotations omitted) (stating that decision on merits in favor of criminal defendant of "some or all of the factual elements of the offenses charged" constitutes acquittal on merits). Back contends that because she is similarly situated to petitioners whose convictions were vacated or reversed on grounds consistent with innocence and whose charges *were* dismissed by a prosecutor, and because she is denied consideration of her petition under subdivision 3 on the arbitrary basis that a prosecutor has to dismiss a charge that was effectively dismissed by the supreme court, she is denied equal protection under both the federal and state constitutions.

The Equal Protection Clause of the United States Constitution guarantees that no state will "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause of the Minnesota Constitution

18

guarantees that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 1, § 2. "[A] facial challenge to a statute on equal-protection grounds asserts that at least two classes are created by the statute, that the classes are treated differently under the statute, and that the difference in treatment cannot be justified." *State v. Richmond*, 730 N.W.2d 62, 71 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. June 19, 2007).[2] The constitutionality of a statute is a question of law, which we review de novo. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011). "[Appellate courts] presume that Minnesota statutes are constitutional and will strike down a statute as unconstitutional only if absolutely necessary." *Id.* "To prevail, a party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision." *Id.*

To determine whether a statute violates equal protection, the threshold consideration is whether similarly situated persons are treated differently. *Id.* at 521. If the challenged statute does not treat similarly situated persons differently, there is no equal protection violation. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 657 (Minn. 2012). Persons are similarly situated if "they are alike in all relevant respects." *Cox*, 798 N.W.2d at 522.

---

[2] In addition to her facial equal protection challenge, Back purports to bring an as-applied challenge to the statute. However, we believe that her challenge is essentially a facial challenge because she does not claim that the statute is facially neutral yet inequitably applied. *See Richmond*, 730 N.W.2d at 71 ("A facially neutral statute can violate the guarantee of equal protection if it is applied in a way that makes distinctions between similarly situated people without a legitimate government interest.").

We conclude that section 590.11, subdivision 1(1)(i), creates two classes of persons: (1) those whose convictions are vacated or reversed on grounds consistent with innocence and whose charges are dismissed by the prosecutor, presumably under Minn. R. Crim. P. 30.01[3]; and (2) those whose convictions are vacated or reversed on grounds consistent with innocence and whose charges are not dismissed by the prosecutor. Because Back's conviction was reversed on grounds consistent with innocence, as we held in Part I of this opinion, we conclude that she is similarly situated to petitioners whose convictions were reversed on grounds consistent with innocence and whose charges were dismissed by the prosecutor, and she therefore meets the threshold requirement for her equal protection challenge.

We review an equal protection challenge to a statute "under a rational basis standard unless the challenge involves a suspect classification or a fundamental right." *State v. Garcia*, 683 N.W.2d 294, 298 (Minn. 2004). We agree with the parties that the rational basis test applies to Back's constitutional challenge because the statute involves neither a suspect classification nor a fundamental right. In order to prevail on her equal protection challenge, Back need only show that the statute violates either the federal or state constitution. Because we conclude that section 590.11, subdivision 1(1)(i), violates the Equal Protection Clause of the Minnesota Constitution, we analyze Back's claim solely under the Minnesota rational basis test. *See id.* at 297, 299–301 (applying only Minnesota

---

[3] Under rule 30.01, "The prosecutor may dismiss a complaint or tab charge without the court's approval, and may dismiss an indictment with the court's approval. The prosecutor must state the reasons for the dismissal in writing or on the record."

rational basis test and striking down statute based on violation of state equal protection clause, even though defendant challenged statute under both state and federal constitutions); *State v. Russell*, 477 N.W.2d 886, 887–91 (Minn. 1991) (same).

Under the Minnesota rational basis test, a statute must satisfy three requirements:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Russell*, 477 N.W.2d at 888 (quotation omitted).[4]  The Minnesota Supreme Court has described the Minnesota rational basis test as "a more stringent standard of review" than the federal rational basis test, requiring "a reasonable connection between the actual, and

---

[4] The district court applied a version of the Minnesota rational basis test that was more deferential to the legislature, relying on *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 721–23 (Minn. 2007) (stating, in a constitutional challenge to a workers' compensation statute, "We have consistently concluded that it is proper to defer to the legislature in matters concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits" (quotations omitted)).  In the absence of more explicit guidance from the supreme court, however, we apply the Minnesota rational basis test as articulated in *Russell* because it appears to be the default rational basis test under the Minnesota Constitution.  *See, e.g.*, *In re Guardianship & Conservatorship of Durand*, 859 N.W.2d 780 (Minn. 2015) (involving different treatment of protected and non-protected surviving spouses under elective share statute); *Garcia*, 683 N.W.2d 294 (involving different jail credit treatment for juveniles designated as extended jurisdiction juveniles and juveniles certified as adults); *Wegan v. Village of Lexington*, 309 N.W.2d 273 (Minn. 1981) (involving different statutes of limitations in dram shop actions based on type of alcohol involved); *Weir v. ACCRA Care, Inc.*, 828 N.W.2d 470 (Minn. App. 2013) (involving different treatment of personal care assistants under unemployment compensation statute).

21

not just the theoretical, effect of the challenged classification and the statutory goals." *Id.* at 889. We analyze the three requirements articulated in *Russell* in a slightly different order.

First, we conclude that the purpose of the statute is legitimate because there needs to be a process for deciding who is eligible for compensation under the MIERA and because innocence is a legitimate criterion.

Second, however, we conclude that the distinction between the classes is not genuine and substantial. As noted above, section 590.11, subdivision 1(1)(i), creates two classes of persons. The distinction between these classes—dismissal by the prosecutor—is manifestly arbitrary and fanciful because, where an appellate court or a postconviction court vacates or reverses a conviction and does not order a new trial, and where there are no other pending charges, the case is concluded, and there is no further action for the prosecutor to take. *See* Minn. R. Crim. P. 28.02, subd. 12 (stating, in pertinent part, that upon reversal, appellate court must "vacate the conviction and enter a judgment of acquittal"); *Black's Law Dictionary* 1513 (defining "reversal" as "[a]n annulling or setting aside; esp[ecially], an appellate court's overturning of a lower court's decision"), 1782 (defining "vacate" as "[t]o nullify or cancel; make void; invalidate"). When a court vacates or reverses a conviction and does not order a new trial, the proceedings are over, and the state cannot continue prosecuting the person. *Cf. Pass*, 832 N.W.2d at 840; *Sahr*, 812 N.W.2d at 90. Under these circumstances, requiring a prosecutor to file a dismissal under rule 30.01 is to require a meaningless act.

Requiring the prosecutor to dismiss the charges is a genuine and substantial distinction *only* when an appellate court or postconviction court orders a new trial, which is specifically provided for under subdivision 1(1)(ii) of section 590.11. In that scenario, the proceedings are ongoing, and dismissal by the prosecutor has significance. For example, if a postconviction court orders a new trial based on newly discovered evidence, *see* Minn. Stat. § 590.01, subd. 1 (2014), the prosecutor could decide to dismiss the charges under rule 30.01 if the prosecutor no longer thinks that the evidence supports a conviction or thinks that new evidence establishes that the petitioner is innocent. In contrast, requiring the prosecutor to dismiss the charges in a case under subdivision 1(1)(i) of the statute, after an appellate court or a postconviction court has vacated or reversed a judgment on grounds consistent with innocence and has not ordered a new trial, is manifestly arbitrary and fanciful and, as Back argues, could result in prosecutorial abuse.

Third, we conclude that the classification is not genuine or relevant to the purpose of the law. Because dismissal by the prosecutor is meaningless and ineffectual under these circumstances, there is no evident connection between this requirement and the purpose of the law. In other words, the requirement under subdivision 1(1)(i) that the prosecutor dismiss the charges does not assist postconviction courts in differentiating between those who are entitled to a subdivision 3 proceeding to determine innocence, and those who are not.

Therefore, applying the Minnesota rational basis test, we hold that by defining "exonerated" to require not only the vacation or reversal of a judgment of conviction on grounds consistent with innocence, but also the dismissal of the charges by a prosecutor,

23

section 590.11, subdivision 1(1)(i), violates the Equal Protection Clause of the Minnesota Constitution.

We must now determine if we can sever the offending portion of the statute while leaving the rest of the statute intact.

> Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn. Stat. § 645.20 (2014). In severing the portions of the statute that render it unconstitutional, we are to retain as much of the statute as possible. *State v. Melchert-Dinkel*, 844 N.W.2d 13, 24 (Minn. 2014).

Because the legislature did not specifically instruct otherwise, we presume that the legislature intended for the provisions of section 590.11 to be severable. Thus, the phrase in subdivision 1(1)(i) "and the prosecutor dismissed the charges" is severable unless the rest of the statute is essentially and inseparably connected with and dependent upon it. As discussed in Part I of this opinion, subdivision 1 is simply the initial eligibility requirement, and subdivision 3 is the primary merits-based eligibility requirement where the petitioner must establish her innocence. If, as in this case, the prosecutor disagrees that the petitioner is innocent, the prosecutor can oppose the petition under subdivision 3(b). Moreover, as

24

discussed above, the disputed phrase in subdivision 1(1)(i) constitutes a meaningless and ineffectual requirement, particularly in light of rule 28.02, subdivision 12, which provides that the appellate court, upon reversal, must vacate the conviction and enter a judgment of acquittal. We conclude that the rest of the statute is not essentially and inseparably connected with and dependent upon the disputed phrase, and we conclude that the legislature would have wanted the rest of the statute to remain in effect. Accordingly, we sever and excise the words "and the prosecutor dismissed the charges" from section 590.11, subdivision 1(1)(i).

Because Back's conviction was reversed on grounds consistent with innocence, and because we have severed the requirement that the prosecutor must dismiss the charges, we hold that Back is an exonerated person under section 590.11, subdivision 1(1)(i). The postconviction court erred by denying Back's petition on the basis that she is not an exonerated person.

### D E C I S I O N

Because the statute violates Back's equal protection rights under the Minnesota Constitution, we sever the words "and the prosecutor dismissed the charges" from section 590.11, subdivision 1(1)(i). We conclude that Back is an "exonerated" person under the statute and that the postconviction court abused its discretion by denying Back's petition. We therefore reverse the denial of the petition and remand for further proceedings under subdivision 3 of section 590.11. We reiterate that Back has only satisfied the initial eligibility requirement under subdivision 1 of the statute and express no opinion as to

25

whether she will be able to establish innocence during the proceeding provided for under subdivision 3(b).

**Reversed and remanded.**

**HALBROOKS,** Judge (dissenting)

I respectfully dissent. In reversing Back's conviction of culpable negligence manslaughter, the supreme court held that "[b]ecause the evidence is not sufficient to prove that Back was culpably negligent, Back's conviction for second-degree manslaughter is reversed." *State v. Back*, 775 N.W.2d 866, 872 (Minn. 2009). Because Back's judgment of conviction was not reversed, nor was a new trial ordered, "on grounds consistent with innocence," I would conclude that Back was not "exonerated" and is therefore not eligible for compensation under the plain language of Minn. Stat. § 590.11 (2014). I would affirm the district court's order denying Back's petition for an order declaring eligibility for compensation. It is, therefore, unnecessary to consider Back's equal-protection challenge to the statute.

As a threshold matter, I note that nothing in the language or structure of the compensation-eligibility statute persuades me that the legislature envisioned a multi-step screening process by the district court. I reject the majority's characterization of Minn. Stat. § 590.11, subd. 1, which includes only definitions, as an "initial eligibility requirement." To the extent that any "initial eligibility" determination occurs, it is by the prosecutor in deciding whether to join in the petition. Minn. Stat. § 590.11, subd. 3(a).

I also disagree with the majority's conclusion that the phrase "on grounds consistent with innocence" in Minn. Stat. § 590.11, subd. 1(1), is ambiguous. Statutory language is only ambiguous when it is "subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). Reading subdivision 1(1) in context, "on grounds consistent with innocence" is not subject

to more than one reasonable interpretation.  If the language of a statute is unambiguous, we apply its plain meaning.  *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010).  We therefore need not consider legislative intent here.[5]

It is axiomatic that "innocent" is not the same as "not guilty."  "The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless."  *Jackson v. Virginia*, 443 U.S. 307, 323, 99 S. Ct. 2781, 2791 (1979).  Reversal of a conviction because the evidence does not support the charged offense therefore does not equate to blamelessness.  *See id.* ("Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar.").

That "actual innocence" has a special meaning in federal habeas review also supports the conclusion that a reversal for insufficient evidence does not equate to "grounds consistent with innocence."  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).  The federal habeas "actual innocence" standard requires a showing that no reasonable juror would have convicted the petitioner and permits the court to assess newly discovered evidence and the credibility of witnesses.  *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct.

---

[5] Although my analysis rests on the plain and unambiguous language of the statute, so that consideration of legislative history is not necessary, I note that my ultimate conclusion is consistent with committee testimony and floor debates.  The testimony from the Innocence Project was that cases qualifying for compensation based on exoneration would be "extremely rare."  Additionally, the compensation statute was passed in response to the reversal of two convictions based on newly discovered scientific evidence establishing that no crime was committed, supporting my narrow reading of "grounds consistent with innocence" in Minn. Stat. § 590.11, subd. 1(1).

851, 868 (1995). Under this strict standard, habeas petitions advancing genuine claims of actual innocence are extremely rare. *Id.* at 321 n.36, 324, 115 S. Ct. at 864 n.36, 865. The sufficiency-of-the-evidence standard, on the other hand, is limited to review of record evidence and deference to the fact-finder's credibility determinations. *Id.* at 330, 115 S. Ct. at 868. Because reversal of a conviction for insufficient evidence is based solely on the evidence adduced at trial, a reversal for insufficient evidence is not consistent with a determination that the defendant is innocent.

In evaluating the meaning of "innocence," we also construe the statute "as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Schroedl*, 616 N.W.2d at 277. The postconviction statute specifically provides a mechanism for obtaining relief when "scientific evidence not available at trial . . . establishes the [person's] actual innocence." Minn. Stat. § 590.01, subd. 1(2) (2014). To this end, the statute permits a convicted person to make a motion for the performance of fingerprint or forensic DNA testing to demonstrate the person's "actual innocence" under certain circumstances. *Id.*, subd. 1a (2014). And there is an exception to the two-year time bar for filing a petition for postconviction relief for newly discovered evidence when petitioner "establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted." *Id.*, subd. 4(b)(2) (2014).

Further, if a prosecutor does not join in a compensation-eligibility petition, the petitioner is only eligible for compensation "based on the establishment of innocence if the petitioner establishes that a crime was not committed or that the crime was not committed

D-3

by the petitioner." Minn. Stat. § 590.11, subd. 3(b). In determining eligibility, the district court "may consider acts by the petitioner that may have contributed to bringing about the conviction and any other offenses that may have been committed by the petitioner in the same behavioral incident." *Id.*, subd. 4.

Reading Minn. Stat. § 590.11, subd. 1(1), in the context of the statute as a whole and in light of the common legal usage of "innocence," I would conclude that the phrase "on grounds consistent with innocence" encompasses only a very narrow class of persons who can establish actual (as in factual) innocence, which does not exist here. The supreme court reversed Back's conviction (relying largely on civil caselaw) on the ground that the state failed to produce sufficient evidence to prove that Back breached any duty of care to the victim. *Back*, 775 N.W.2d at 866-67.[6]

Notably, Back did not raise this duty argument to the district court, to this court, or to the supreme court. *Id.* at 869 n.5. The supreme court addressed the issue sua sponte because it determined that the existence of a duty was dispositive. *Id.* (citing *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990)). Although appellate courts may certainly "review any other matter as the interest of justice may require," Minn. R. Civ. App. P. 103.04, reversal based on a legal theory not raised by the parties is not akin to

---

[6] The majority construes the supreme court's reversal in *Back* as one made "as a matter of law" that Back had no duty to the victim. Therefore, the majority asserts that the supreme court's holding was based on legal impossibility and not on insufficiency of the evidence. But the supreme court held that the state could have proved that Back had a duty by demonstrating that she had a special relationship with either the victim or the individual that shot the victim—the state simply failed to "introduce any evidence to support the conclusion." *Back*, 775 N.W.2d at 872.

newly discovered evidence as contemplated by the postconviction statute.  Nor does the reversal of Back's conviction mean that a crime was not committed.  In short, Back was not "exonerated" by the reversal of her conviction.

Back's conviction was reversed based on insufficient evidence of duty in the trial record and not on a showing of actual or factual innocence.  Reading Minn. Stat. § 590.11 in the context of the postconviction statute as a whole, I would conclude that when a conviction is reversed because the state failed to introduce evidence to prove an element of the offense, the reversal is not "on grounds consistent with innocence."