Danna Rochelle BACK, Respondent,

v.

STATE of Minnesota, Appellant.

A15-1637

Supreme Court of Minnesota.

Filed: September 27, 2017

Daniel J. Bellig, Joseph A. Gangi, Farrish Johnson Law Office, Chtd., Mankato, Minnesota, for respondent.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, David C. Brown, Deputy County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota, for appellant.

Karen Daniel, Sara Sommervold, Andrea Lewis, Center on Wrongful Convictions, Chicago, Illinois; and Colette Routel, Mitchell Hamline School of Law, Saint Paul, Minnesota, for amicus curiae The Center on Wrongful Convictions Women's Project.

Timothy J. Droske, Nathan J. Ebnet, Dorsey & Whitney LLP, Minneapolis, Minnesota, for amici curiae The Innocence Network and the Innocence Project of Minnesota.

## OPINION

STRAS, Justice.

This case requires us to determine whether Danna Rochelle Back may file a petition for an order declaring her eligible for compensation under Minnesota's Imprisonment and Exoneration Remedies Act, Minn. Stat. §§ 590.11, 611.362–.368 (2016) (the "exoneration-compensation statute"). The case raises three purely legal questions. First, was Back "exonerated" under Minn. Stat. § 590.11, subd. 1(1)(i), when we reversed her conviction of second-degree manslaughter after concluding that she could not have been negligently culpable as a matter of law? Second, if our decision did not "exonerate[]" Back, can a statute, consistent with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, require a prosecutor to dismiss charges that have already been reversed by an appellate court? Third, if the prosecutorial-dismissal requirement is unconstitutional as applied to Back, is it severable from the remainder of the exoneration-compensation statute? Because the answer to all three questions is no, we reverse the decision of the court of appeals, which severed only the prosecutorial-dismissal requirement from Minn. Stat. § 590.11, subd. 1(1)(i).

## FACTS

In 2007, Back was involved in an altercation between two men, both of whom were at one point in a romantic relationship with Back. The altercation escalated into a shooting, which resulted in the death of one of the men. *State v. Back*, 775 N.W.2d 866, 867-68 (Minn. 2009). Although Back did not possess or fire the murder weapon, the State charged her with multiple counts of homicide based on her involvement. *Id.* Following a trial, a jury found Back guilty of second-degree manslaughter, which requires an offender to "cause[] the death of another ... by ... culpable negligence ... creat[ing] an unreasonable risk ... of causing death or great bodily harm to another." Minn. Stat. § 609.205(1) (2016); *Back*, 775 N.W.2d at 869. We reversed Back's conviction, concluding as a matter of law that Back was not culpably negligent because she did not have a duty to control the shooter or protect the victim. *Back*, 775 N.W.2d at 872.

Several years later, following the passage of the exoneration-compensation statute, Back filed a petition seeking remuneration as an "exonerated" individual under Minn. Stat. § 590.11, which sets forth the definitions and procedural requirements for pursuing exoneration-compensation claims. The State opposed Back's petition, arguing that Back was not "exonerated" under Minn. Stat. § 590.11 because the

prosecutor never dismissed the second-degree-manslaughter charge. *See* Minn. Stat. § 590.11, subd. 1(1)(i) (defining "exonerated" to mean that "a court of this state" has "vacated or reversed a judgment of conviction ... *and* the prosecutor dismissed the charges" (emphasis added)). It is undisputed that the prosecutor failed to take any action following our decision, much less "dismiss[ ]" the second-degree-manslaughter charge. Nevertheless, Back argued before the district court that the prosecutorial-dismissal requirement, as applied to her case, violates equal protection because it denied eligibility based on an irrational classification: the prosecutor's failure to carry out what was, in Back's view, a meaningless act. The district court disagreed and denied Back's petition, concluding that the prosecutorial-dismissal requirement does not violate equal protection.

The court of appeals reached a different conclusion on the constitutional question. According to the court of appeals, the prosecutorial-dismissal requirement violates equal protection because requiring the prosecutor to affirmatively act has no impact on the proceedings once an appellate court reverses a criminal conviction outright. *Back v. State*, 883 N.W.2d 614, 626-27 (Minn.App. 2016). Rather than invalidating the entirety of Minn. Stat. § 590.11, subd. 1(1)(i), however, the court severed only the prosecutorial-dismissal requirement from the remainder of the provision, effectively requiring only "a court of this state ... [to] vacate[ ] or reverse[ ] a judgment of conviction on grounds consistent with innocence" for an individual to qualify as "exonerated." We granted the State's petition for review to address the meaning of the term "exonerated"; whether the prosecutorial-dismissal requirement violates equal protection; and if necessary, the remedy for the equal-protection violation.

## ANALYSIS

The exoneration-compensation statute, which the Legislature enacted in 2014, establishes a framework for compensating individuals who have served time in prison after a wrongful conviction. *See* Minn. Stat. §§ 590.11, 611.362–.368. The threshold determination under the exoneration-compensation statute is whether an individual has been "exonerated." *See* Minn. Stat. § 590.11, subds. 1, 3. If an individual has been "exonerated" and has met various other eligibility requirements in Minn. Stat. § 590.11, subd. 5, such as having been "convicted of a felony and served any part of the imposed sentence in prison," then the district court "shall issue an order" declaring the claimant eligible for compensation. *See* Minn. Stat. § 590.11, subd. 7.

Gaining eligibility under the exoneration-compensation statute, however, is only the first step on the path to a monetary award. If the district court decides that a claimant is eligible, the claimant then has 60 days to file another petition, which is considered by a compensation panel "of three attorneys or judges" appointed by the Chief Justice. *See* Minn. Stat. §§ 611.362–.363. If the parties cannot reach a settlement, the panel must hold an evidentiary hearing to "determine the amount of damages to be awarded" based on the evidence and arguments of the parties. *See* Minn. Stat. §§ 611.363–.364. The final award is forwarded to the Commissioner of Management and Budget, who must then "submit the amount of the award to the [L]egislature for consideration ... during the next session of the [L]egislature." Minn. Stat. § 611.367. The decision of the compensation panel, just like the decision of the district court on the initial order of eligibility, is subject to judicial review. *See* Minn. Stat. § 590.11, subd.

8 (allowing the initial order to be appealed to the court of appeals if certain requirements are met); Minn. Stat. § 611.366 (permitting "[a] party aggrieved by an award of damages" to obtain "judicial review of the decision" in accordance with Minnesota's Administrative Procedure Act).

## I.

Each of the legal questions presented by this case arises out of the first step of the exoneration-compensation statute: the district court's initial determination about whether a claimant is eligible to submit a petition to the compensation panel. The district court determined that Back was ineligible because the prosecutor—here, the Hennepin County Attorney—never dismissed the charges against her, even after we reversed Back's second-degree-manslaughter conviction on appeal. The first question we must answer, before addressing Back's constitutional argument, is whether our reversal of Back's conviction, standing alone, "exonerated" her. Answering this question presents an issue of statutory interpretation that we review de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011).

The plain language of the statute answers the interpretive question posed by this case. Specifically, Minn. Stat. § 590.11, subd. 1, defines what it means to qualify as "exonerated" under the exoneration-compensation statute. It states as follows:

> Subdivision 1. Definition. For purposes of this section, "exonerated" means that:

(1) a court of this state:

(i) vacated or reversed a judgment of conviction on grounds consistent with innocence *and the prosecutor dismissed the charges*; or

(ii) ordered a new trial on grounds consistent with innocence and the prosecutor dismissed the charges or the petitioner was found not guilty at the new trial; and

(2) the time for appeal of the order resulting in exoneration has expired or the order has been affirmed and is final.

Minn. Stat. § 590.11, subd. 1 (emphasis added).

To qualify as "exonerated," "a court of this state" must either "vacate[ ] or reverse[ ]" a judgment of conviction on grounds consistent with innocence" or "order[ ] a new trial on grounds consistent with innocence." *Id.* We will assume, for the sake of deciding this particular case, that Back satisfies the first of the two alternatives based on our decision reversing her second-degree-manslaughter conviction on sufficiency-of-the-evidence grounds.[1]

■ Both definitions of "exonerated," however, require at least one additional act. Under the first definition, in addition to having a court "vacate[ ] or reverse[ ] a judgment of conviction on grounds consistent with innocence," a prosecutor must dismiss the charges. Minn. Stat. § 590.11, subd. 1(1)(i). So too under the second definition, which requires either a jury acquittal or prosecutorial dismissal of the

1. The State and Back disagree about whether the reversal of her conviction on sufficiency-of-the-evidence grounds was "consistent with innocence." The district court did not address this question. The court of appeals concluded that the phrase was ambiguous, but that our reversal of Back's conviction was "consistent with innocence under any reasonable interpretation of the phrase." *Back*, 883 N.W.2d at 623. We need not decide this question here because, regardless of our answer, we conclude below that the prosecutorial-dismissal requirement violates the Equal Protection Clause of the Fourteenth Amendment as applied to Back.

charges after a court "order[s] a new trial on grounds consistent with innocence." *Id.*, subd. 1(1)(ii). The additive nature of these requirements is denoted by the use of the word "and" in both provisions, which indicates that, as applicable here, prosecutorial dismissal was required in addition to, not in lieu of, our reversal of Back's conviction. *See State v. Nelson*, 842 N.W.2d 433, 440 (Minn. 2014) (describing the word "and" as a conjunctive); *see also Musacchio v. United States*, ——— U.S. ———, ———, 136 S.Ct. 709, 714, 193 L.Ed.2d 639 (2016) (noting how the use of the conjunction "and" in a jury instruction *added* an element to the offense). Because it is undisputed that the prosecutor took no action to dismiss the second-degree-manslaughter charge, Back does not satisfy the statutory definition of "exonerated."

## II.

■ Having determined that Back does not qualify as exonerated under Minn. Stat. § 590.11, subd. 1(1)(i), even though we reversed her second-degree manslaughter conviction, we now turn to the second question presented in this case: whether the prosecutorial-dismissal requirement violates equal protection. The essence of Back's equal-protection argument is that the first definition of "exonerated" is irrational because its requirements create what amounts to an impossible sequence of events. Specifically, she argues that if a court first "vacate[s] or reverse[s]" a conviction outright to satisfy the first requirement of the definition in Minn. Stat. § 590.11, subd. 1(1)(i), at least in a case involving only a single charge, then there is nothing left for the prosecutor to dismiss to satisfy the second requirement. Likewise, if a prosecutor first

dismisses the charge, then nothing remains for a court to "vacate[ ] or reverse[ ]." In either scenario, Back asserts, the provision makes eligibility to proceed with a petition for compensation dependent on the performance of one act that is legally impossible, which is the definition of an irrational law. *Cf. Zablocki v. Redhail*, 434 U.S. 374, 394, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (Stewart, J., concurring) (concluding a state law that penalizes individuals "for failing to do that which they cannot do" must be "irrational").

■ "We review the constitutionality of a statute de novo." *State v. Benniefield*, 678 N.W.2d 42, 45 (Minn. 2004). In this case, the applicable standard arises out of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which says that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.[2] In evaluating an equal-protection challenge, the Supreme Court has articulated a three-tiered standard of review, requiring heightened scrutiny if a suspect class or a fundamental right is involved. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The parties here agree that the determination of which claimants qualify as "exonerated" under the exoneration-compensation statute does not implicate a fundamental right or a suspect class, so we evaluate Back's constitutional challenge under the rational-basis test. *See Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) (stating that the rational-basis test applies when "a legislative classification or distinction neither

---

2. We evaluate Back's constitutional challenge under the United States Constitution because, if the challenged legislation fails under the federal rational-basis test, it surely would also fail under Minnesota's rational-basis test. *See State v. Garcia*, 683 N.W.2d 294, 298-99 (Minn. 2004) (describing the federal rational-basis test as "more deferential").

burdens a fundamental right nor targets a suspect class" (citation omitted) (internal quotation marks omitted)).

Rational-basis review, the most deferential of the three tiers of review, requires only that the statutory classification "be rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The Supreme Court has made clear that a statutory classification subject to rational-basis review bears "a strong presumption of validity" and that those attacking it "have the burden 'to negative every conceivable basis which might support it.'" *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)). As the Supreme Court has cautioned, engaging in rational-basis review is not an opportunity to "judge the wisdom, fairness, or logic of legislative choices." *Id.* at 313, 113 S.Ct. 2096. Rather, such review provides "wide latitude" to states when making statutory classifications. *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249.

Despite the wide latitude afforded by rational-basis review, it still requires *some* fit between the classification and the state interest supporting it. *Id.* at 442, 105 S.Ct. 3249 (explaining how rational-basis review examines whether a law is a "rational means to serve a legitimate end"). The definition of "exonerated" in Minn. Stat. § 590.11, subd. 1(1)(i), as applicable here, divides claimants into three classes: (1) those, such as Back, whose convictions are "vacated or reversed," but who do not have their charges dismissed by a prosecutor; (2) those who have their charges dismissed by a prosecutor, but whose convictions are never "vacated or reversed"; and (3) those who have their charges dismissed

by a prosecutor *and* their convictions "vacated or reversed." Even though the substantive standard applicable to all three groups is the same—whether a conviction has been vacated or reversed "on grounds consistent with innocence"—only the third group of claimants is eligible to file a petition for compensation. The question is whether the classification among these three groups of similarly situated individuals has a rational basis. *See State v. Cox*, 798 N.W.2d 517, 521-22 (Minn. 2011). We conclude that it does not.

The purpose of the exoneration-compensation statute is to compensate individuals wrongfully convicted of felony offenses. *See* Act of May 16, 2014, ch. 269, § 1, 2014 Minn. Laws 1020, 1020 ("An act relating to public safety; compensating exonerated persons; appropriating money ...."). In the abstract, separating wrongfully convicted individuals into distinct groups based on the particular facts surrounding their convictions, such as whether a claimant has served time in prison for the wrongful conviction, has a rational basis. *See, e.g.*, Minn. Stat. § 590.11, subd. 5 (stating that a claimant can only "make a claim for that portion of time served in prison during which the person was serving no other sentence"). What is not rational, however, is the situation presented here: separating groups of claimants based on whether the prosecutor has dismissed charges that no longer exist, which the court of appeals described as "a meaningless act." *Back*, 883 N.W.2d at 626-27. Indeed, the court of appeals did not go far enough in describing the irrationality of the provision's prosecutorial-dismissal requirement, which makes eligibility to file a petition for compensation dependent on a legally impossible act, one that requires a prosecutor to dismiss criminal charges that no longer exist.

To be sure, Minn. R. Crim. P. 30.01 allows a prosecutor to voluntarily dismiss criminal charges against a defendant. But once an appellate court reverses a judgment of conviction outright, a separate rule, Minn. R. Crim. P. 28.02, subd. 12(b), requires the court to "vacate the conviction and enter a judgment of acquittal." And "[o]nce an acquittal occurs, the prosecution is over." *State v. Pass*, 832 N.W.2d 836, 840 (Minn. 2013). Thus, under the Minnesota Rules of Criminal Procedure, dismissal of the charges by a prosecutor and outright reversal of a conviction are mutually exclusive remedies: receiving one completely eliminates the availability of the other. A defendant can get one or the other, but not both.

Recognizing that prosecutorial dismissal after a conviction has been reversed outright is without precedent in criminal practice, the State maintains that Minn. Stat. § 590.11, subd. 1, is a special type of dismissal that has a completely separate effect from a dismissal during an active criminal case. Even if a post-reversal dismissal has no effect on the prosecution, the State argues, Minn. Stat. § 590.11 authorizes such a dismissal to allow the prosecutor to consent to a claimant's eligibility for compensation. To the extent that the State argues that it can file a Rule 30.01 dismissal to fulfill the prosecutorial-dismissal requirement, we reject this argument because, as detailed above, Rule 30.01 does not allow a prosecutor to dismiss charges that no longer exist.

To the extent that the State argues that Minn. Stat. § 590.11, subd. 1(1)(i), itself creates a *separate* post-reversal procedure allowing a prosecutor to dismiss a case, we reject this argument as well.[3] The exoneration-compensation statute, despite setting forth detailed procedural requirements for the consideration of compensation petitions, does not establish any procedure by which a prosecutor may dismiss charges that no longer exist, solely to fulfill the requirements in Minn. Stat. § 590.11, subd. 1(1)(i). This argument, in other words, is merely a post hoc rationalization for a legislative command to perform an impossible act. If the statute is to be corrected in the manner that the State urges—to include a special statutory procedure for prosecutorial dismissal of reversed or vacated charges—it is for the Legislature, not this court, to do. *See Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 213 (Minn. 2014) ("In short, if the Implied Consent Law needs revision in order to make it embody a more sound public policy, the Legislature, not the judiciary, must be the reviser.").

In essence, the Legislature has set up a regime under which a claimant's eligibility to file a compensation petition is contingent on whether the prosecutor has performed a legally impossible act. Because there is no rational basis for such a classification, we conclude that Minn. Stat. § 590.11, subd. 1(1)(i), as applied to Back, violates the Equal Protection Clause of the Fourteenth Amendment.

## III.

The third and final question presented by this case is how to remedy

---

3. In fact, the State's argument is inconsistent with the plain language of Minn. Stat. § 590.11, subd. 1. The provision uses an active verb in a clause containing a legislative command, "and the prosecutor dismissed the charges," to describe the prosecutorial-dismissal requirement. The use of the active verb, "dismissed," suggests that the provision is referring to prosecutorial action that actually leads to the dismissal of the charges, not some purely symbolic action by the prosecutor after a court has already dismissed the charges. A prosecutor that voluntarily dismisses extinguished charges has filed a dismissal, but he or she has not "dismissed the charges."

the constitutional violation. Our authority to remedy a constitutional violation, including the possibility of severing the unconstitutional portion of a law, derives from the Minnesota Constitution, and in general, we are to sever as little as possible of an unconstitutional law. *See State v. Melchert-Dinkel*, 844 N.W.2d 13, 24 (Minn. 2014) (stating that we "attempt to retain as much of the original statute as possible while striking the portions that render the statute unconstitutional"); *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 306-07 (Minn. 2000).

This case requires us to determine how much of the unconstitutional law to excise, with the possibilities ranging from partial severance of the unconstitutional provision to total invalidation of the exoneration-compensation statute. At one end of the spectrum, we could partially sever the prosecutorial-dismissal requirement from Minn. Stat. § 590.11, subd. 1(1)(i); or partially sever subdivision 1(1)(i) from the remainder of Minn. Stat. § 590.11. A more aggressive approach would be to sever all of Minn. Stat. § 590.11 from the exoneration-compensation statute, a form of full severance; or totally invalidate the exoneration-compensation statute, Minn. Stat. §§ 590.11, 611.362–.368, which would require the Legislature to reenact an entirely new statutory scheme. In this case, one of the narrower options—partially severing subdivision 1(1)(i) from Minn. Stat. § 590.11—fully remedies the constitutional violation without impairing the legislative scheme.[4]

We do not adopt the narrowest option, proposed by Back and the dissent, which would sever only the prosecutorial-dismissal requirement from Minn. Stat. § 590.11, subd. 1(1)(i). Under our severance jurisprudence, we do not excise just a word or a phrase from a provision if "the valid provisions [of the law] are so essentially and inseparably connected with, and so dependent upon, the void provisions that the Legislature would not have enacted the valid provisions without the voided language." *Melchert-Dinkel*, 844 N.W.2d at 24 (internal quotation marks omitted); *see, e.g., Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 838 (Minn. 2002) (severing the full provision, rather than a single word, because the court could not conclude that the Legislature would have enacted the provision had it known "its preference . . . were [*sic*] invalid").

It is far from clear, as an initial matter, that the Legislature would have enacted Minn. Stat. § 590.11, subd. 1(1)(i), without the prosecutorial-dismissal requirement. After all, the plain language and structure of the exoneration-compensation statute, taken as a whole, create a significant role for the prosecutor at multiple steps of the process, not just at the initial step of determining whether a claimant has been "exonerated." *See* Minn. Stat. § 590.11, subd. 3 (allowing the prosecutor to join or oppose the exonerated individual's petition for compensation); *id.*, subd. 4 (giving the prosecutor the right to present additional evidence, file a written statement, or make an oral statement at an exoneration-com-

---

4. As severed, the statute would read as follows:

Subdivision 1. Definition. For purposes of this section, "exonerated" means that:

(1) a court of this state:

(i) vacated or reversed a judgment of conviction on grounds consistent with innocence and the prosecutor dismissed the charges; or

(ii) ordered a new trial on grounds consistent with innocence and the prosecutor dismissed the charges or the petitioner was found not guilty at the new trial; and

(2) the time for appeal of the order resulting in exoneration has expired or the order has been affirmed and is final.

*See* Minn. Stat. § 590.11, subd. 1.

pensation hearing). We therefore do not share the dissent's confidence that the Legislature would have enacted the provision without some involvement by the prosecutor, given the preference for prosecutorial involvement elsewhere in the statute.

Moreover, the prosecutorial-dismissal requirement and the court-action requirement are "essentially and inseparably connected with," and "dependent upon," one another for two reasons. First, the conjunctive "and" connects the two requirements, indicating that exoneration requires the "concurrence of both grounds." *Farnam v. Linden Hills Congregational Church*, 276 Minn. 84, 149 N.W.2d 689, 696 (1967). Had the objective been to require only one of the two grounds, making neither ground dependent on the other, then "the disjunctive 'or' would have been used." *Id.* Second, the two requirements "depend[ ] on each other" because they "operat[e] together for the same purpose": to define "exonerated" and establish who can bring a petition for compensation. *Associated Builders*, 610 N.W.2d at 307 (quoting *Anderson v. Sullivan*, 72 Minn. 126, 75 N.W. 8, 9–10 (1898)) (internal quotation marks omitted) (explaining that when other provisions "are connected by subject matter," they are more likely to be severed as well); *State ex rel. Finnegan v. Burt*, 225 Minn. 86, 29 N.W.2d 655, 657 (1947). Indeed, the other definition of "exonerated," which applies when a court orders "a new trial on grounds consistent

with innocence," also requires prosecutorial dismissal of charges in the absence of an acquittal.[5] *See* Minn. Stat. § 590.11, subd. 1(1)(ii).

The pervasive nature of the prosecutorial role throughout the exoneration-compensation statute demonstrates that the prosecutorial-dismissal requirement is anything but, as the dissent contends, an "error in [ ] drafting." A true drafting error, often called a "scrivener's error," is defined as a "technical error," such as "transposing characters or omitting an obviously needed word" that "can be rectified without serious doubt about the correct reading." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 439 (2012); *see, e.g., State ex rel. Robertson v. Lane*, 126 Minn. 78, 147 N.W. 951, 953 (1914) ("[T]he word 'now' [was] a misprint for 'not' . . . .").

Here, by contrast, it seems clear that, in light of the remainder of the exoneration-compensation statute—which involves the prosecutor in some capacity at nearly every stage of the process—the legislative design was to allow the prosecutor to have a say in who qualifies as "exonerated." It is true that the Legislature picked an inoperative means to express its preference for prosecutorial involvement, but such an error does not mean, as the dissent would conclude, that we should simply discard the prosecutorial-dismissal requirement and apply whatever remains. *See Chapman*, 651 N.W.2d at 837 (declining to sever

---

5. Our decision in this case is limited to the first definition of "exonerated." We express no opinion about whether Minn. Stat. § 590.11, subd. 1(1)(ii), which allows an individual to seek compensation when a court orders a new trial on grounds consistent with innocence and a "prosecutor dismiss[es] the charges *or* the petitioner [is] found not guilty at a new trial," raises a similar constitutional problem. *See State ex rel. Grozbach v. Common Sch. Dist. No. 65*, 237 Minn. 150, 54

N.W.2d 130, 133 (1952) ("It is not necessary in the case at bar to decide whether the other provisions [of the statutes] are constitutional. Courts will not decide questions of constitutionality unless it is absolutely necessary to do so."); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 505, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (cautioning that a court "should not extend its invalidation of a statute further than necessary to dispose of the case before it").

only the word "Minnesota" from the provision for "Minnesota charitable contribution deduction[s]" because what remained would contradict the legislative preference "not to allow a deduction for contributions to non-Minnesota charities").

To hold otherwise would allow us, under the guise of severance, to rewrite the exoneration-compensation statute's eligibility requirements, a task that is within the Legislature's purview, not ours. Providing the Legislature with an opportunity to revise the statute is consistent with the separation of powers, a structural principle that the Minnesota Constitution explicitly safeguards. *See* Minn. Const. art. III, § 1; *Chapman*, 651 N.W.2d at 838 n.6 (severing a full provision in a statute and noting that the court's severance "[was], of course, subject to legislative modification"). We do the least damage to the statutory scheme, as well as to the separation of powers itself, when we refrain from speculating as to what the Legislature could have done and instead rely on what the Legislature actually did. *See State v. Hensel*, 901 N.W.2d 166, 180, 2017 WL 4052301, at *11 (Minn. Sept. 13, 2017) (discussing how a "shave-a-little-off-here" statute "may well be more sensible, but ... it bears little resemblance to the statute that the Legislature actually passed"); *Cone v. Nimocks*, 78 Minn. 249, 80 N.W. 1056, 1058 (1899) (Canty, J., concurring in part, dissenting in part) ("[T]his court has no right ... to speculate or suppose that the [L]egislature blundered or was laboring under a mistake when it passed this section.").

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

Concurring in part, dissenting in part, Lillehaug, Hudson, Chutich, JJ.

## CONCURRENCE & DISSENT

LILLEHAUG, Justice (concurring in part, dissenting in part).

I concur with the opinion of the court, and agree with the court of appeals, that the phrase at issue in the exoneration-compensation statute, Minn. Stat. § 590.11, subd. 1(1)(i) (2016)—"and the prosecutor dismissed the charges"—refers to a "legally impossible" act, and thus violates the Equal Protection Clause of the Fourteenth Amendment. The offending phrase would exclude from the compensation process some of the very Minnesotans the Legislature intended to benefit: those whose judgments of conviction have been "vacated or reversed ... on grounds consistent with innocence." *Id.*

But I respectfully dissent because the court's remedy for the unconstitutional phrase is no remedy at all. By severing not just the offending phrase, but also the entirety of subsection (i), the court excludes the innocent persons the Legislature intended to compensate. This severance has the hallmarks of a cleaver rather than a scalpel. It defies the Legislature's statutory instruction to the judiciary that we use a light touch when severing unconstitutional provisions, and thus damages the separation of powers.

Indeed, the way the court's opinion dismembers the statute causes a more significant equal-protection violation. The opinion creates two categories of exonerated persons, one eligible for compensation and one not eligible for compensation. Innocent persons exonerated by dismissal of the charges or the verdict at a new trial are still welcome to participate in the compensation process. But innocent persons whose judgments of conviction have been reversed by the courts are shut out. This distinction is utterly irrational.

## I.

The Legislature has told us what to do when we find unconstitutional language in a statute. Minnesota Statutes § 645.20 (2016) provides as follows:

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

The plain language of this statute[1] makes clear that our duty is to sever as narrowly as possible. Our precedent recognizes as much: "When a court determines that a law is unconstitutional, it must invalidate only as much of the law as is necessary to eliminate the unconstitutionality." *State v. Shattuck*, 704 N.W.2d 131, 143 (Minn. 2005); *see also State v. Melchert-Dinkel*, 844 N.W.2d 13, 24 (Minn. 2014) ("We . . . attempt to retain as much of the original statute as possible while striking the portions that render the statute unconstitutional."); *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 305 (Minn. 2000) (critiquing arguments advocating for the "draconian" result that an "entire law" be "declared unconstitutional," and deciding to "proceed on a far less

disruptive course of severing from the law the offending provision . . . and preserving its other parts").

We sever narrowly not merely because the Legislature has instructed us to do so. We do so because it "does the least damage" to the law's structure and better serves the "overriding purposes" of the law. *Shattuck*, 704 N.W.2d at 144-46; *see State v. Chauvin*, 723 N.W.2d 20, 25 (Minn. 2006) (agreeing with precedent where we opted for narrow severance to "do the least amount of damage to the statutory scheme"); *see also State v. Ali*, 855 N.W.2d 235, 254 (Minn. 2014) (opting for narrow severance and quoting *Chauvin*, 723 N.W.2d at 25).

Moreover, narrow severance is consistent with our judicial role in a constitutional system of separated powers. As we recognized in *Associated Builders*, 610 N.W.2d at 305, "it could well be argued that" broad severance "would be overstepping our judicial bounds in disregard of the constitutional principle of separation of powers." In *Shattuck*, we recognized our statutory-severance precedent as a "traditional, deferential approach." 704 N.W.2d at 147; *see also id.* at 148 (Anderson, G. Barry, J., concurring in part, dissenting in part) ("Severability is an analytical tool designed to protect the separation of powers by preventing the court from substitution of its judgment for the judgment of the elected representatives of the people.").

As section 645.20 directs, we sever more broadly only if one of two exceptions applies. First, we sever the entirety of a statutory section only "if we determine that the valid provisions 'are so essentially and inseparably connected with, and so

---

1. The presumption that we sever narrowly was already well recognized when the Legislature passed section 645.20 in 1941. *See Anderson v. Sullivan*, 72 Minn. 126, 75 N.W. 8, 9-10 (1898) (stating that "while a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also").

dependent upon, the void provisions' that the Legislature would not have enacted the valid provisions without the voided language." *Melchert-Dinkel*, 844 N.W.2d at 24 (quoting *Shattuck*, 704 N.W.2d at 143). Second, we sever the entirety of a statutory section if "the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with legislative intent." *Shattuck*, 704 N.W.2d at 143 (quoting Minn. Stat. § 645.20). The opinion of the court relies on the first exception, asserting that an entire subsection in subdivision 1 of the statute must be severed because the Legislature intended to give prosecutors a "critical role" at this stage of the exoneration process. I disagree.

## II.

The presumption of narrow severance is not overcome by the notion that this unconstitutional phrase is essentially and inseparably connected with, and dependent upon, the rest of subdivision 1(1)(i), for four reasons.

First, subdivision 1(1) is not a "stage" of the exoneration process; it is part of the definition of the word "exonerated." The definition includes a legally meaningless phrase. By contrast, the same phrase as used in subdivision 1(1)(ii) is not legally meaningless. This suggests an error in the drafting of subdivision 1(1)(i). *See City of Duluth v. Sarette*, 283 N.W.2d 533, 537 (Minn. 1979) (narrowly severing "superfluous" unconstitutional statutory language). We should sever to correct that apparent error.

Second, if the Legislature intended the prosecutor to have a significant role in exoneration compensation after a conviction is vacated or reversed, that role is well protected by the rest of the statute. The prosecutor has the opportunity and responsibility to respond to any "petition

for an order declaring eligibility for compensation based on exoneration." Minn. Stat. § 590.11, subd. 2 (2016). If the prosecutor joins the petition, that "conclusively establish[es] eligibility for compensation." *Id.*, subd. 3(a) (2016). If the prosecutor declines to join the petition, the petitioner has the burden of proof on the issue of eligibility for compensation "based on the establishment of innocence." *Id.*, subd. 3(b) (2016). In any event, the prosecutor has "the right to present additional evidence," file a "written statement," and present oral argument "to support or refute the petition." *Id.*, subd. 4 (2016). Therefore, any concern that narrow severance would undermine the prosecutor's role in exoneration compensation proceedings is unfounded.

Our precedent counsels such narrow severance even when the Legislature has assigned a significant but unconstitutional role to a public official in a proceeding. In *Shattuck*, we addressed a provision in the Minnesota Sentencing Guidelines that authorized "the district court to impose an upward durational departure based on the court's own findings." 704 N.W.2d at 144. The Legislature gave the district court not only a critical role, but the ultimate role, in the procedure for upward durational departures. We concluded that the provision violated the Sixth Amendment right to trial by jury, and turned to consider how much of the Guidelines we should sever. *Id.* at 141. The State argued that "the Sentencing Guidelines would never have become law" without the district court's ultimate role in the proceeding, and argued that we should instead sever "two provisions of the Sentencing Guidelines that suffer from no constitutional infirmity" in order to preserve the district court's role. *Id.* at 145, 147. We disagreed and instead severed only the unconstitutional language, namely, the district court's au-

thority to impose an upward durational departure based on its own findings. *Id.* at 146.

By contrast, in *Leiendecker v. Asian Women United of Minnesota*, we saw good reason, not present here, to sever more broadly. 895 N.W.2d 623, 637-38 (Minn. 2017). In *Leiendecker*, we held unconstitutional two clauses of Minn. Stat. § 554.02 (2016), which set forth the burden of proof and the judicial standard for dismissing a specific type of claim. *Id.* at 635-37. We further held that those clauses were "inseparable from the remainder of the section" because, without them, the statute "provide[d] no procedure for courts to determine" whether the claim should be dismissed. *Id.* at 638. We therefore concluded that the entire section was unconstitutional as applied. *Id.*

Unlike the statute in *Leiendecker*, and like the Guidelines in *Shattuck*, the exoneration-compensation process is entirely functional after the unconstitutional, legally-impossible language is severed. Unlike *Leiendecker*, narrow severance leaves untouched the entirety of the *procedure* for compensation.

Third, even if the unconstitutional requirement that "the prosecutor dismissed the charges" were "essentially and inseparably connected with" the valid requirement that a court has "vacated or reversed a judgment of conviction on grounds consistent with innocence"— which, as discussed above, it is not—the majority's approach is still wrong. The statutory exception to the general severance direction requires, *in addition*, that the valid language be "dependent upon" the void language. Minn. Stat. § 645.20 ("[U]nless the court finds the valid provisions of the law are so essentially and inseparably connected with, *and so dependent upon*, the void provisions . . . ." (emphasis added)); *see Farnam v. Linden*

*Hills Congregational Church*, 276 Minn. 84, 149 N.W.2d 689, 696 (1967) ("[T]he conjunctive 'and' used in the exclusionary clause of the act requires concurrence of both grounds of exclusion and, had only one ground been intended to be required, the disjunctive 'or' would have been used."). Here, it is self-evident that a court's reversal of a conviction on grounds consistent with innocence is not *dependent* upon any action the prosecutor might take thereafter. In fact, the court's action is plainly *independent* of any action by the prosecutor.

Finally, by severing language that is fully constitutional, the court undermines the underlying purpose of the statute. The exoneration-compensation statute is remedial legislation. *Cf. Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543-44 (Minn. 1995) ("When engaging in statutory construction, we interpret remedial legislation broadly to better effectuate its purpose."). Broad severance conflicts directly with the law's overriding goal: to compensate exonerated persons for the liberty that they lost. Act of May 16, 2014, ch. 269, § 1, 2014 Minn. Laws 1020, 1020 ("An act relating to public safety; compensating exonerated persons; appropriating money . . . ."). Tellingly, the title of the act was the Imprisonment and Exoneration *Remedies* Act. The court's method of severance obliterates eligibility for compensation for an entire group for which the Legislature created a remedy: innocent persons whose convictions have been vacated or reversed.

Indeed, the court's decision perpetuates and exacerbates the equal-protection violation that it could have remedied narrowly. It is our "duty to construe a statute or ordinance, *if at all possible*, in a way that is consistent with the constitution." *Sarette*, 283 N.W.2d at 537 (emphasis added). The court's severance discriminates be-

tween two classes of innocent people. Because subdivision 1(1)(ii) remains intact, innocent people who received dismissal or acquittal after a new trial was ordered may be compensated. But because subdivision 1(1)(i) has been severed, innocent people whose judgment of conviction was vacated or reversed cannot be compensated. Thus, the court's "remedy" repeats and broadens the equal-protection violation, harming the very persons injured by the original violation.

To summarize, I agree with the court, and with the court of appeals, that Minn. Stat. § 590.11, subd. 1(1)(i), requires both that an appellate court has "vacated or reversed a judgment of conviction on grounds consistent with innocence and the prosecutor [has] dismissed the charges." I also agree with the court, and with the court of appeals, that the requirement that "the prosecutor [has] dismissed the charges" violates the Equal Protection Clause of the Fourteenth Amendment. But I disagree with the court, and agree with the court of appeals, on the remedy. The correct statutory and constitutional remedy is to sever only the words "and the prosecutor dismissed the charges," thereby maintaining eligibility for compensation for innocent persons whose convictions have been vacated or reversed.

### III.

Because the opinion of the court severs the entirety of subdivision 1(1)(i), the court does not decide one other issue in the case: whether the reversal of Back's conviction was one "consistent with innocence" as those words are used in subdivision 1(1)(i). Because I would not sever the phrase that includes the words "consistent with innocence," I would decide that issue.

Back's petition for compensation is based on our reversal of her conviction for second-degree manslaughter. *See State v.* *Back,* 775 N.W.2d 866 (Minn. 2009). We held that Back was not culpably negligent as a matter of law because there was no evidence that she had the necessary special relationship, or duty. *Id.* at 872. The question is whether that particular reversal was one "consistent with innocence."

In answering the question, the court of appeals accurately identified the legal definition of "innocence": "[t]he absence of guilt; esp[ecially], freedom from guilt for a particular offense." 883 N.W.2d at 620 (citation omitted). On the meaning of the phrase "consistent with innocence," the court of appeals further observed that the phrase is ambiguous because it can mean either "in agreement with" or "not contradictory with." *Id.* at 621. The court held that the reversal of Back's conviction satisfied either definition. *Id.* at 622-23.

For the purpose of this concurrence and dissent, I see no need to reach the question of whether the phrase is ambiguous. Instead, I agree with the court of appeals that, under either interpretation of the phrase, our reversal of Back's conviction was consistent with innocence. In other words, I read our prior decision to say that Back was free from, or had an absence of, guilt for the offense of second-degree manslaughter.

For these reasons, I would affirm the decision of the court of appeals.

HUDSON, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Lillehaug.

CHUTICH, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Lillehaug.